Slattery, guardian, &c., *vs.* Smiley.

(Decided July 11th 1866.)

MICHAEL SLATTERY, GUARDIAN OF MARY J. McGRATH, *vs.* JAMES SMILEY.

GUARDIANS,—APPOINTMENT AND REMOVAL OF: CODE, ART. 93, SEC. 232: APPEALS: CODE, ART. 5, SEC. 29.—Upon a true construction of Art. 93, sec. 232, of the Code, any application for the removal of a guardian must allege *improper conduct* on the part of the guardian, either in relation to the care and management of the property or person of the infant; and to authorize the removal such allegation must be sustained by proof.

The act of the Court in making an appointment of guardian, being the act of a Court of competent jurisdiction, ought to be supported by every legal intendment, assuming, as must be done—the first appointment being brought in question incidentally—that it was legally and properly made.

The comprehensive language of Art. 5, sec. 29, of the Code, relating to appeals from orders, &c., of Orphans' Courts, is certainly broad enough to embrace orders removing guardians.

APPEAL from the Orphans' Court of Baltimore city:

The petition was filed in this case on the 7th of October, 1865, by the appellee against the appellant, who is a priest of the Roman Catholic Church, of the city of Baltimore, and who had been, on the 25th of October, 1862, duly appointed the guardian of Mary J. Magrath, an orphan and an infant, alleging that the appellant had been so appointed guardian at the request of the great-grandmother of the child, and against the wishes of the mother, and claiming that he, the petitioner, was uncle to the child, and as such had a right to the guardianship, and praying the removal of the appellant and the appointment of himself, the appellee, as guardian.

To this petition the appellant answered, denying any right in the petitioner, as uncle, to the guardianship, and denying that he, the respondent and appellant, had been appointed without the mother's consent, &c.

Testimony was then taken orally in open Court, and the case argued, and the opinion of the Court announced, but not filed until some days afterwards, and so far the proceedings were "*summary,*" but the Court afterwards filed their decree, and the respondent appealed and asked to have the proceedings made "*plenary,*" and that the testimony be taken down in writing. The appellant then offered his answer upon oath, which the Court refused to receive.

The testimony so taken was, in effect, as follows: The relationship existing between the parties, as stated in the petition, having been established, it was proved that the appellant was a priest of the Roman Catholic Church, about fifty years of age, and of irreproachable character—some of the witnesses testifying that he was, in every way, well qualified for the trust to which he had been appointed, and others

expressing the contrary opinion, and assigning as reasons therefor that the appellant was unmarried, without a domestic establishment, a parish priest charged with the care of an extensive parish, with a large congregation, and liable at any time to be removed to a different field of labor.

Other witnesses testified to the excellent moral character of the appellee, his fitness for the guardianship of the infant, his niece; that he was a married man, his wife being also a cousin of the infant, and well suited and willing to assume its care.

It was also proved that the infant was living in the boarding school of the Sisters of Charity, at St. Joseph's, Barre street, Baltimore, where, as far as was known, she was well fed and clothed, and otherwise well treated and cared for.

The Orphans' Court, on the 9th of November, 1865, passed an order, that "being convinced that it has the power to revoke, and that it would be for the best interest and happiness of the ward to revoke the letters of guardianship in said case, it orders and decrees that the letters of guardianship in said case, heretofore granted and committed to said Michael Slattery, as guardian of said Mary J. McGrath, be and the same are hereby revoked, and that the said James Smiley, who is the nearest of kin to the said ward, be and he is hereby appointed the new guardian," &c.

From this order the guardian first appointed appealed.

*Robert C. Barry*, for the appellant, argued:

1st. That under the distinctions of "summary" and "plenary" proceedings, under the Maryland Code of General Law, Art. XCIII., 249, 250, and Art. V., 40, the course pursued by the counsel for the appellant was correct, and his answer on oath ought to have been received.

2nd. That if said answer on oath was properly rejected, this case is duly here under the summary proceedings and appeal, and must be considered by this Court.

3rd. That the petitioner, the uncle of the child, has no legal right to the guardianship of the child; the right of administration is given by positive law, Code, XCIII., 18 to 33; but no *right* to guardianship exists except in the child's parents.

4th. A guardian may be *removed* for improper conduct, or, upon the application of the guardian, his letters may, in the *discretion* of the Court, be revoked. Code, XCIII, 186, 187, 188, 189, 194 and 232. But in this case there is no improper conduct imputed, and there is no ground for the exercise of a discretion in the removal; legal discretion is not "whim," nor is it "prejudice;" Lord Coke defines it to be: "To know, through the law, what is just." See *Wharton's Dic. of Juris.*, title "*Discretio.*"

*Henry Stockbridge* and *John H. Ing* for the appellee:

The appellee contends that the appointment of guardians, the revocation of their authority, and all matters connected therewith, are, by the laws of Maryland, confided solely to the Orphans' Courts in the exercise of their sound judicial discretion, and that from their action, in the exercise of such discretion, no appeal will lie. *Code of General Laws, Art.* 93, *sec.* 189, *p.* 658, showing the jurisdiction of the Court to be vested, "for any cause," in cases of "revocation." "The exercise of the discretion of a Court is not cause of error, or matter from which an appeal will lie." *Wall's Ex'r vs. Wall*, 2 *H. & G.*, 79. *Thomas vs. Doub*, 1 *Md. Rep.*, 324. *Ellicott vs. Warford*, 4 *Md. Rep.*, 86. *Salmon vs. Pierson*, 8 *Md. Rep.*, 298. *Falconer vs. Regelier*, 6 *Md Rep.*, 552. *Ex-parte Shipley*, 4 *Md. Rep.*, 497. *Hebb vs. Hebb*, 5 *Gill Rep.*, 509. *Compton vs. Compton*, 2 *Gill Rep.*, 253.

But if an appeal would lie, this case is not one in which the decision of the Orphans' Court should be reversed. The death of the mother of the ward, Mary Jane Magrath, in

fact, changed entirely the position and necessities of said Mary. Before that, the guardian, (though nominally in law the guardian both of her person and property,) was, in fact, but the trustee of her estate while her mother retained the custody and control of her person; sent her to school when she saw fit and withdrew her at her pleasure. But the death of that mother left the legal guardian the sole custodian of the person as well as the trustee of the estate. This new class of duties, thus devolved upon the guardian, most unquestionably should lead the Court to require different qualifications in the person selected to discharge those duties, from what would have been previously required. The Rev. Father, from the necessities of his position, could never afford the child a home.

GOLDSBOROUGH, J., delivered the opinion of this Court.

The appeal in this case is taken from an order or decree of the Orphans' Court of Baltimore city, passed on the 9th day of November, 1865, revoking the guardianship of the appellant, and appointing the appellee guardian to Mary Jane McGrath. The case was heard on petition, answer, replication and the testimony set out in the record.

The jurisdiction of the Orphans' Courts to remove a guardian is derived from the 232nd section of the 93d Article of the Code. That section provides that the Orphans' Courts "may, on the application of an infant, or any person in his behalf, suggesting improper conduct in any guardian, either in relation to the care and management of the property or person of any infant, inquire into the same, and at their discretion remove such guardian," &c.

The appellant was appointed guardian in October, 1862, and the petition of the appellee was not filed until the 7th day of October, 1865. There was no appeal from the order of the Orphans' Court by which the appellant was appointed

guardian; and this Court said, in the case of *Lefever vs. Lefever*, 6 *Md. Rep.*, 478, that the act of the Court, in making an appointment of guardian, being the act of a Court of competent jurisdiction, ought to be supported by every legal intendment, assuming, as we are bound to do, that the first appointment, coming before us thus incidentally, was legally and properly made. But the point before us is the propriety of the Court's action in revoking the guardianship of the appellant. By the 232nd section of the 93d Article, any application to remove a guardian, according to our construction of that section, must allege improper conduct on the part of the guardian, either in relation to the care and management of the property or person of the infant; and such an allegation must be sustained by proof.

We have examined the appellee's petition and find no allegation whatever of improper conduct on the part of the appellant since his appointment. Whatever influence the facts set out in the petition might have had upon the action of the Orphans' Court when the appellant was appointed, we are not called on now to decide. But the appellee contends that the removal of the appellant was within the discretion of the Orphans' Court, and, therefore, no appeal will lie. By the 59th section of the 5th Article of the Code, it is provided that "in all decrees, orders, decisions and judgments made by the Orphans' Courts, the party who may deem himself aggrieved by such decree, order, decision or judgment, may appeal to the Court of Appeals," &c. This comprehensive language will certainly embrace this case, especially as the petition does not allege, or the evidence show, any improper conduct on the part of the appellant, therefore, the discretion exercised by the Court was not a sound, legal discretion, but arbitrary and subject to review by this Court on appeal.

Finding that there was error in the decree of the Orphans'

Court, the same will be reversed with costs in both Courts to the appellant, and the petition dismissed.

*Decree reversed.*

(Decided July 12th, 1866.)