(Decided 21st June, 1883.)

DANIEL S. FORNEY and RICHARD CROMWELL *vs.* JOHN P. SHRINER and PETER SHRINER.

*Article 93, section 241, of the Code—Orphans' Court—Appeal.*

An appeal lies from an order of the Orphans' Court revoking the letters of a joint administrator, upon the application of his co-administrator, under sec. 241, Art. 93, of the Code.

APPEAL from the Orphans' Court of Baltimore County.

The case is stated in the opinion of the Court.

The cause was argued before MILLER, STONE, ROBINSON, and IRVING, J.

*C. Ridgely Goodwin, Richard S. Culbreth,* and *John I. Yellott,* for the appellants.

*D. G. McIntosh, Orville Horwitz,* and *George Hawkins Williams,* for the appellees.

MILLER, J., delivered the opinion of the Court.

Jacob S. Forney, of Baltimore County, died, leaving a will by which he appointed William A. Russell his execu-

tor. The executor died in December, 1882, and in the same month the Orphans' Court granted letters of administration *d. b. n. c. t. a.* to Richard Cromwell, Daniel Forney, and John P. Shriner, who represented the three families amongst whom the estate was by the will distributed. Of these the two former were non-residents, living in Missouri, while the latter was a resident of Maryland. Afterwards, on the 21st of March, 1883, complaint was made to the Orphans' Court by Shriner, the resident administrator, to the effect that he has been embarrassed in the discharge of his duties by the non-residence of his co-administrators, and by their unwillingness or inability to unite with him in doing what is necessary to the best administration of the estate; that without consulting him, and without his assent, they have collected several thousand dollars from sales of personal property belonging to the estate, and have removed it out of the State, and have, as he is advised, distributed the same to parties to him unknown; that they have been continuously absent from this State, where all the property of the deceased is situated, almost the whole time since the grant of letters to them; that they have made misrepresentations to the Court, and he finds himself unable to act in harmony with them in the administration; that he apprehends he is likely to suffer by their negligence and misconduct, and by the improper use and misapplication of the assets of the estate, and he prays that their letters may be revoked.

The Court thereupon, on the 27th of March, passed an order which, after reciting that the petition and complaint of Shriner had been considered, " and it appearing to this Court that he is likely to suffer by the negligence and misconduct of his said co-administrators, and by their improper use and misapplication of assets belonging to the estate, and the Court being satisfied that his complaint is well founded, and that said administration should no longer be confided to them," proceeds to revoke their let-

ters, and directs them to surrender and deliver to Shriner any assets in their hands belonging to the estate. From this order Forney and Cromwell have taken an appeal, and now a motion is made to dismiss the same upon the ground that from such an order no appeal lies.

The order was passed under section 241, Art. 93, of the Code, which provides that "Whenever any joint administrator or executor shall apprehend that he is likely to suffer by the negligence or misconduct in the administration, improper use, or misapplication of the assets of the estate by any executor or administrator, he shall make complaint to the Orphans' Court, and if the same shall be *adjudged* well founded, the Court shall have authority, *in their discretion,* to revoke the powers and authority of the executor or administrator so complained of." This particular section of the testamentary law has never before been directly presented to the Appellate Court for construction, but in *Jones, Adm'x vs. Jones,* 41 *Md.,* 354, it was expressly decided that an appeal will lie by a single administrator from an order revoking his letters, and it was there said that *Ex parte Shipley and Wife, Adm'rs of Wood,* 4 *Md.,* 493, and *Porter, Ex'x, &c. vs. Timanus, et al.,* 12 *Md.,* 283, in which the appeals were dismissed, were cases coming under section 237, which gives authority to the Orphans' Court to revoke his letters if the administrator refuses to comply with an order to bring into Court, or place in bank, or invest money received by him as such administrator. Again, in *Slattery, &c. vs. Smiley,* 25 *Md.,* 389, it was held that an appeal from an order removing a guardian, passed under section 232, which provides that the Orphans' Court "may, on the application of an infant, or any person in his behalf, suggesting improper conduct in any guardian whatever, either in relation to the care and management of the property or person of the infant, *inquire into* the same, and, *at their discretion,* remove such guardian and make choice of another who shall

receive the property and custody of the ward," and that allegations against the guardian which this section contemplates must be sustained by proof. The discretionary power here given is couched in very similar, and in fact substantially the same, language as that contained in the section under consideration. In the former the Court is required to "inquire into" the complaint, and in the other to "adjudge" whether it be "well founded." If the language of the one section, coupled with the broad terms in which the right of appeal is given to any party who may deem himself aggrieved by a decree, order, or judgment of the Orphans' Court, (Code, Art. 5, sec. 39,) admits of an appeal, the same construction must be placed upon that of the other. If the discretion vested in the Court is not absolute and irreviewable in the one case, it cannot be so in the other. The motion to dismiss must therefore be overruled, and we must determine whether the order shall be affirmed or reversed.

If this depended on the state of case presented by the original record there would be no difficulty in reversing the order. In that record the *Register* certifies that there was "no evidence on summary proceedings before the Court" when the order appealed from was passed, "other than is contained in this record," and clearly there is in this record no evidence whatever to justify the order. But in a supplemental record, brought up by the appellee under a writ of diminution, the *Judges* of the Orphans' Court deny this statement of the Register, and order it to be amended so as to correspond with the facts recited in the diminution record. From these it appears the Court had before it, when the application for the order was heard, a letter of Cromwell, written for himself and Forney, from Missouri, dated the 27th of January, 1883, addressed to the Court, in which it is admitted they may have acted indiscreetly in leaving Maryland without making settlement on account of sales, but they thought Shriner could

do that; that Forney received and paid out more than either, which reduced the cash he had on hand to $1000; that he had $106, and when Forney came home he gave him $300, and of this he gave $100 to his sister as a portion of her legacy, as she was in straitened circumstances, but he says he will stand responsible for it; that Forney also sent $200 to his widowed sister, and he, Forney, will stand responsible for that; and in conclusion, they say, "If we have done wrong let us know and we will send the money back, as we want to comply strictly with the law of Maryland." It also appears that prior to this, on the 24th of January, Shriner had filed a petition to the Court stating that Forney and Cromwell had left the State and would not return for several months; that prior to their departure they, acting with him, had sold certain personal property of the deceased at public and private sale, and the money has been collected in part by him, and in part by them, and he believes they have carried away to Missouri the amount they collected; that this makes it embarrassing to him to keep a proper account of the estate, and he therefore prays for an order requiring all moneys which have been or may be collected to be deposited in Baltimore banks in the joint names of the three, and also requiring him and them forthwith to render an account of the sales made and the moneys collected by them respectively, and in view of the fact that they intend to remain away from the State for some time, he prays that the bank account may be subject to his order alone, until they return and procure a further order in the premises. The petition further states that the bonds and stocks belonging to the estate have been deposited in the Safe Deposit and Trust Company, subject to access by *two* of the administrators, but as this will be impossible until one of them returns to Baltimore, he prays for an order allowing him individually to have access to these securities until the further order of the Court. Upon this petition the

Court, on the same day, (January 24th,) passed an order requiring the administrators to render to the Court forthwith an account, under oath, of their sales and collections, to deposit the moneys in their hands in certain named banks in the joint names of the three, but subject to the check of Shriner alone until further order, and also allowing him free access to the box containing the securities of the deceased. The Judges also certify, in this record, that when the order of the 27th of March was passed, it did not appear that any account of sales or collections had. been returned as required by order of the 24th of January, and that it was passed after full argument by counsel for the respective parties, in which the facts above referred to were commented upon.

If the case rested upon this record it is clear the order would have to be affirmed, for the failure of the appellants to account and deposit the money as required, afforded abundant ground for the revocation of their letters. But another supplemental record has been brought up under a writ of diminution obtained by the appellants, from which it appears that early in February they *had rendered their accounts* as required, and that on the 12th of that month the Court passed an order *rescinding* that of the 24th of January, and substituting therefor directions that the moneys be deposited in the banks in the names of the three, and subject to their *joint* check, and allowing the three *jointly* access to the security box. From all this it is manifest the Judges were in error when they certified, in effect, that no such accounts had been rendered up to the 27th of March. The question then comes at last to this, have they complied with that part of the order of the 24th of January, which required them to deposit in bank the money in their hands? If they have done this the records disclose no good reason for revoking their letters. In our opinion there is enough upon the face of these records to warrant. the inference that this has been done.

In Cromwell's account the balance due by him is stated as a "balance in bank," and in the latter part of the order appealed from the direction is "that all funds belonging to said estate *remain* in the bank or banks *where they now are.*" But, more than this, the rescinding or modifying order of the 12th of February *restored them* to their joint control over the bank accounts and the securities. We can conceive of no possible reason why this order in their favor should have been passed if they were then in default in respect to their accounts and deposits. But at all events there is quite enough in these records to justify a reversal of the order and the remanding of the case, to the end that this matter may be re-examined by the Orphans' Court. In our opinion justice to the appellants, in view of the state in which the records before us appear, requires such action by this Court. If, upon such remanding, it shall be found that they have paid the money into bank, they will be entitled to retain their offices, unless some subsequent negligence or misconduct be alleged and proved against them.

This disposition of the case dispenses with the necessity of saying anything in regard to the order refusing to grant to the appellants plenary proceedings in respect to the charges made against them, from which an appeal was also taken.

*Order reversed, and*
*cause remanded.*

(Decided 21st June, 1883.)

STONE, J., dissented as to the right of appeal.