CATHARINE LEFEVER, Mother and Next Friend of JOHN Z. LEFEVER, *vs.* DANIEL LEFEVER, Guardian of JOHN Z. LEFEVER.

Upon the death of the father the mother becomes the natural guardian of her infant children, and upon qualifying and giving bond, as required by the act of 1816, ch. 203, she is entitled to the control of both their persons and property, to the exclusion of all other persons.

But unless the mother qualifies and gives bond in a *reasonable time,* it will work a forfeiture of her privilege, and the orphans court must appoint a guardian in her place, though she makes no *formal renunciation* of her right to act as such.

Where a mother was summoned by the court to give bond as guardian to her children, and neglects for *three months* to comply with the requirements of the law, it must be assumed that she has rejected or abandoned the trust, and the appointment of another in her place is proper and legal.

The mother's acceptance of the guardianship must be evidenced by her compliance with the law, and if she does not so accept, she is to be regarded as thereby having renounced the trust.

The 2nd section of sub-ch. 12 of the act of 1798, ch. 101, does not impose the *duty* upon the orphans court to cite the infant before the court in *all cases*

before a legal appointment of guardian can be made; it only contemplates cases where it would be important and proper to consult the infant, and where the court might suppose the infant had been purposely kept out of its presence.

But in all cases where the infant has attained sufficient discretion, and is within the reach of the process of the court, it is proper and becoming for the court to consult his wishes in appointing his guardian, and those wishes should be gratified, where they can be, without prejudice to his interests.

Where a guardian ill treats his ward or neglects his duty, his appointment may be revoked under the 12th section of the act of 1798, ch. 101, sub-ch. 15, and a new one appointed.

Upon appeal from an order refusing to revoke the appointment of a guardian, the propriety of the order appointing him is not open for review, and that appointment must be assumed to have been legally and properly made.

In all cases where the decree or judgment of a court of competent jurisdiction is brought incidentally under review, this court must assume that what was done was rightly done.

APPEAL from the Orphans Court of Washington county.

The record in this case shows, that Henry Lefever died leaving the appellant Catharine, his widow, and several minor children, one of whom was John Z. Lefever. On the 27th of January 1854, the orphans court issued a summons to the said Catharine, to appear on the 3rd of February following, and show cause "why she does not become guardian to the minor heirs of the deceased." The minutes of the court show that she failed to appear at the appointed time, but that on the 7th of February she appeared "and declined to enter into bond as guardian." On the 2nd of May following the court appointed Daniel Lefever, a brother of the deceased, guardian to the said John Z. Lefever.

On the 5th of the same month, (May,) the said infant, by his said mother and next friend, filed his petition praying that his mother might be permitted to exercise her legal rights as natural guardian, and that she might bond as required by law, which she offered to do, and in the event of her declension of the guardianship or failing to give bond, that the infant being of sufficient age might be permitted to make an election of a proper person as guardian, subject to the sanction and ratification of the orphans court. The petition then avers

60        v.6

that the appointment of Daniel Lefever was made without authority in the orphans court, and was improper and illegal, because the mother had not been regularly summoned before the court and there required to give bond, and that she had not in fact declined the guardianship of her said son, and because the said infant had never been summoned or brought before the court in order to make his selection of guardian, which was a valuable right secured to him by the law of the land. The petition also alleges, that the said appointment was improper for other reasons, which are stated at length, but which need not be repeated here, as they are sufficiently adverted to in the opinion of this court, and then prayed that said appointment might be revoked.

The answer of the guardian averred that his appointment was regular and legal, and referred to the minutes of the orphans court in support thereof. He denies and repels all the charges against the propriety of his appointment contained in the petition, and makes recriminatory charges against the said Catharine.

Various affidavits and other testimony was then taken, all of which it is unnecessary to state, as the decision of this court is not based upon them. Upon the hearing of the case the court below dismissed the petition, and from that decision this appeal was taken by the petitioner.

The cause was argued before LE GRAND, C. J., ECCLESTON, MASON and TUCK, J.

*Richard H. Alvey* for the appellants, argued:

1st. That Mrs. Lefever, the mother and natural guardian, was never regularly and legally summoned before the orphans court to give bond as natural guardian of John Z. Lefever. Without such summons the proceedings in the appointment of Daniel Lefever were altogether illegal and void. 5 *H. & J.*, 36, *Wickes vs. Caulk.* Ibid., 130, *Shivers vs. Wilson.* 3 *G. & J.*, 103, *Fridge vs. Kirk.* 2 *Bland,* 488, *Corrie's case.* Ibid., 673, *Waring vs. Waring.* The summons here

was to show cause why she would not give bond as guardian of "the minor heirs," not of John Z. Lefever individually. The proof shows that she never did, in fact, decline or relin-quish her rights as mother, to the guardianship of the person and estate of *this* infant, but on the contrary, expressly assented and claimed them; nor did she ever refuse to give bond as such guardian.

2nd. That in the event of his mother refusing to give bond, the infant, being of sufficient age, should have been permitted to make his election of guardian, subject of course to the discretion of the orphans court in the ratification or rejection of the election so made, and he should have been brought before the court for this purpose. The language of the act of 1798, ch. 101, sub-ch. 12, sec. 2, on this point, is *manda-tory*, and not directory or discretionary. See 5 *Comyn's Digest*, 330, *title, Parliament R.*, 22. 2 *Salk.*, 609. *Carthew*, 293, *King vs. Barlow, et al. Skinner*, 370, *King vs. Inhab-itants of Derby.* 5 *Johns. Ch. Rep.*, 101, *Newburgh Turnpike Co. vs. Miller.* The infant had the *right* thus to make his election, and no court would disregard it if properly made. *McPherson on Infants*, 39, in 41 *Law Lib.*, 69.

*J. Dixon Roman* for the appellee, argued:

1st. That the appointment of the appellee as guardian in this case, was regular and valid, according to the law of this State. The mother was repeatedly summoned and as often declined, and refused to accept it.

2nd. There is nothing in the act of 1798 which makes it *obligatory* upon the orphans court to summon the infant before them upon the appointment of his guardian. The word "may" in this act, on this point, does not mean "must." If such be the construction, then *every* child, whether in the State or out of it, of every age, no matter how young, must be brought before the court before it will have jurisdiction to appoint a guardian.

3rd. The appointment of a guardian is purely a matter of discretion in the orphans court, and therefore is not the sub-ject matter of appeal. 2 *Gill*, 241, *Compton vs. Compton.*

Mason, J., delivered the opinion of this court.

Bitter family controversies like the one before us are greatly to be deplored, especially where infants of tender years may become the victims of the animosity and vindictiveness which characterise them; and it would be a high and enobling function of a court of justice to be able, while it settled the legal rights of the contestants, to allay those bitter feelings and restore that harmony and affection which should always mark the intercourse of near relations. But regarding it impossible to accomplish the one, we will proceed to do that which is both our duty and within our power to achieve, namely, adjust the legal rights of the parties to this record: prefacing our action, however, by the remark, that the evidence in the record affords no warrant for the criminatory language employed in both the petition and answer, and we are therefore compelled to conclude it had its origin rather in acerbity of personal feeling than in fact or in truth.

It is true, that upon the death of the husband his widow becomes the natural guardian of her infant children, and is recognised both by our statutory law and judicial decisions as having, in general, the right to the control of both their persons and property, to the exclusion of all other persons. This is, nevertheless, a right which the widow may exercise or not in her discretion, but it is attended with the correlative obligation or duty to qualify and give bond, as provided by the act of 1816, ch. 203. The exercise of the right, therefore, depends upon the performance of the duty, and unless the latter is discharged in a regular manner and in a reasonable time, it will work a forfeiture of the right or privilege. We can perceive no good reason nor discover any authority for the assumption, that the mother must make a *formal renunciation* of her right to act as guardian for her children before another can be appointed in her stead. It is her duty, as we have said, to assert her right to the guardianship in due time and form, and if she does not, the orphans court must appoint a guardian in her place. If this were not so, the mother might hold the guardianship in abeyance for an indefinite period, to the prejudice of the infant's rights. The case of *Fridge vs. The State,*

*use of Kirk*, 3 *Gill & Johns.*, 112, fully sustains this view of the subject.

We come then to apply these principles to the present case. It appears from the record that the mother was cited or summoned, in January 1854, to appear before the court and qualify as guardian. The summons was returnable 3rd February, and was returned, endorsed *"summoned,"* by the sheriff. It further appears, that the appellee was appointed on the 2nd of May following. These are record facts, about which there is no dispute, and we think they are sufficient to determine the case. Having neglected for *three months* to comply with the requirements of the law or to obey the mandate of the court, we think the court properly assumed from these circumstances that Mrs. Lefever had rejected or abandoned the trust, and therefore the appointment of Daniel Lefever was proper and legal. It matters not that the mother doubted and hesitated about accepting the trust, or that she refused formally to renounce it. If she did not accept it, and her acceptance was to be evidenced by a compliance with the law, she was to be regarded thereby as having renounced it.

The infant, it seems, was not cited to appear before the court; and it has been contended, that the 2nd sec. of sub-ch. 12, which provides, that the court "shall have power to call or have brought before them any orphan for the purpose of appointing a guardian," is mandatory, and that before a legal appointment of guardian can be made, the infant must be cited before the court. If this be required in one case it must be in all, for the law makes no exceptions. We can hardly suppose that it was the purpose of the legislature to impose upon the court a duty, which, in many cases, could not be discharged, and in others, would be a mere empty form, for where the infant is out of the jurisdiction of the court, it could not be compelled to appear, or where it is still in the nurse's arms what good could result from its personal presence? We rather suppose the law contemplated cases where it would become important and proper to consult the infant as to the appointment of its guardian, and where it might be supposed it had been purposely kept out of the presence of the court. In such

a case the infant's appearance might be compelled under this section. We have no hesitation, however, in adding, that in all cases where the infant has attained a sufficient discretion, and is within the reach of the process of the court, it would be proper and becoming for the court to consult its wishes in appointing its guardian, and where those wishes can be gratified without prejudice to the infant's interests, they should be.

We do not deem it necessary to express any opinion upon the other testimony in the cause further than to remark, that if it were properly before us, it would be wholly insufficient to invalidate the appointment of the appellee, which, being the act of the court of competent jurisdiction, ought to be supported by every legal intendment.

It will be quite proper for us here to remark, that if, in the future, any of those feelings which have been attributed to Mr. Lefever should so far manifest themselves in his conduct towards his ward as to result in ill treatment, neglect of duty, or should prevent or interrupt that intimate and affectionate intercourse which should always subsist between parent and child, the remedy is to be found in the act of 1798, ch. 101, sub-ch. 15, sec. 12, by which the court is empowered to revoke the appointment and make a new one.

We do not wish to be understood as affirming, that the present appeal presents the question of the regularity and propriety of the appointment of the appellee by the order of the 2nd of May. If parties could open decrees and judgments, on appeal, in this indirect way, it would virtually amount to a repeal of the laws limiting the time within which appeals should be taken, and would lead to interminable litigation. If the appellant wished to contest, in this court, the appointment of the appellee, she should have appealed directly from the order appointing him. The precise and only point properly presented on the present appeal, is, the propriety of the court's action, not in appointing Mr. Lefever, but in refusing to remove him. Surely, there was no cause shown why this should be done, assuming, as we are bound to do, that the first appointment, coming before us thus incidentally, was legally and properly made. In all cases where the decree or judg-

ment of a court of competent jurisdiction is brought thus incidentally under review, we are to assume, in the language of this court, in the case of *Fridge vs. The State,* "that what was done was rightly done."

Decree affirmed with costs.

In addition to what I have said, as the organ of the court, I will remark in my opinion, that hereafter, if, in the judgment of the orphans court, the interests and happiness of the infant and parent could be promoted by the revocation of the appointment of the present guardian, with the view of the appointment of the mother, they would not only have the power to make the change, but that it would be eminently proper and becoming for them to exercise it. Such a step would be but restoring the child to the protection of her, whom nature has designed should be its guardian and friend—its mother. This power, however, should rest in the sound discretion of the court, and should only be exercised with extreme caution and prudence.