## GEORGE YAKEL *vs.* JOHN A. YAKEL ET AL.

*Appeal From Orphans' Court—Powers of One of Two or More Executors—Distribution of Estate Before Expiration of Time For Filing Claims.*

Two of the three executors of the will of a decedent stated an account in the Orphans' Court distributing the balance of the estate to one of the two as trustee under the will. Within thirty days thereafter the third executor filed a petition in that Court alleging that he had refused to join in stating the account because the six months within which creditors of the testator could file their claims had not expired; that that account had been passed without notice to him, and asked that the order ratifying it be rescinded. The Orphans' Court dismissed the petition

"without prejudice." *Held,* that an appeal lies from this order of dismissal, as the order the petitioner sought to have rescinded had been passed without notice to him.

An account distributing the balance of a testator's estate to a trustee under the will was stated in the Orphans' Court by two of the three executors before the expiration of the six months within which creditors could file their claims. There was then outstanding a claim against the testator's estate which was secured by mortgage. The third executor, who did not assent to the account, had given a joint bond with one of the other executors. *Held,* that the order ratifying the account should be rescinded, since, under these circumstances, the two executors could not require distribution of the estate to be made before the expiration of the statutory period for filing claims.

Appeal from the Orphans' Court of Baltimore City.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Robert Biggs,* for the appellant.

*Wm. Ewin Bonn* (with whom was *Daniel H. Hayne* on the brief), for the appellee.

BOYD, J., delivered the opinion of the Court.

The appellant and the appellees qualified as executors of the last will and testament of Louis Yakel on the fourth day of March, 1902, in the Orphans' Court of Baltimore City. They returned an inventory of the personal estate which with cash received amounted to $79,292.93, and on the 11th of June the appellees stated an account in which they charged the three executors with the above amount, received credit for various sums aggregating $26,181.32, and distributed the balance to John A. Yakel, trustee under the will, excepting some items amounting to about $1,000 which were distributed to the widow and to John A. Yakel, trustee for two infants. On the 10th of July, the appellant filed a petition in the Orphans' Court alleging that he had declined "to sign or probate" the said account inasmuch as the time had not expired within which creditors of the testator could file their claims against the estate, that John A. Yakel probated said account as the

act of the three without notice to him, and without any op-
portunity for him to be heard, and that the Court improvi-
dently passed an order approving it and directing distribution
to be made thereunder.   The prayer of the petition is that
the order of June 11th be rescinded.   It is also alleged that
John A. Yakel and the appellant executed a joint bond for
the faithful performance of their duties and that they united
as sureties on the bond of Margaret Yakel.

The appellees filed separate answers—that of Margaret
Yakel, however, adopting the one filed by John A. Yakel.
The latter alleges that the active management of the estate
had been left to him, that full administration of it had been
completed, as far as the same could be in that Court, and
that there was urgent necessity existing for the transfer of the
personal estate to him as trustee so that the estate might be
under one jurisdiction—Circuit Court No. 2, of Baltimore City,
having assumed jurisdiction of the entire trust estate under the
will of Louis Yakel.   It also charges that the account was
submitted to the appellant and approved by him, and that he
was requested by John A. and Margaret Yakel to accompany
them to the Orphans' Court on the 11th day of June, and he
gave as an excuse and reason for declining to join in the pass-
ing of the account the fact that six months had not expired
since the grant of letters, but that was a sham or subterfuge,
as he knew that all claims against the estate had been settled
except that of the Fidelity and Deposit Company for $95,000.
It then states that this claim of the Fidelity and Deposit Com-
pany was a mortgage against the "Yakel Building," a part of
the trust estate.   It is admitted that bonds were executed by
the executors as alleged in the petition.   John A. Yakel
alleges that certain motives which he sets out influenced the
appellant to take the position he did with reference to the ac-
count, but they do not in any way reflect upon the question
before us and need not be further referred to.

The Orphans' Court set the matter for hearing on the 18th
day of July.   At that time the parties and their attorneys
appeared and the petitioner sought to offer testimony in sup-

port of his allegations, but the Court declined to hear it and dismissed the petition. The order states that the petition is "dismissed without prejudice" and that the costs be paid by George Yakel. The appellees have made a motion to dismiss the appeal, but it must be overruled. They rely on the cases of *Megary* v. *Shipley*, 72 Md. 33, and *Lefever* v. *Lefever*, 6 Md. 472, but it is clear they are not applicable. In the former case the Orphans' Court of Baltimore County on the 18th of June, 1889, rescinded a previous order passed by it on an *ex parte* petition, and on the 16th of September an appeal was prayed which was withdrawn on the 24th of that month. On the latter day a petition was filed by which it was sought to rescind the order of the 18th of June and on October 9th, 1889, the Court dismissed that petition. This Court said that " if there was any error in that order, of which the appellant could complain, he should have taken a timely appeal, and had the error corrected," and that the purpose of the petition was a rescission or revocation of the order of the 18th of June, which "was simply to obtain a rehearing of the subject-matter of that order, and thereby to restore the right of appeal that had been lost by delay." In *Lefever* v. *Lefever*, the Orphans' Court appointed the appellee guardian on the 2nd of May, 1854, and on the 5th of that month the infant filed his petition praying that his mother might be permitted to serve as guardian. The Court said "The precise and only point properly presented on the present appeal is the propriety of the Court's action, not in appointing Mr. Lefever, but in refusing to remove him." In both of those cases the parties were duly brought into Court and of couuse they could not bring up for review orders which had been previously passed by filing petitions to rescind, or to indirectly affect them, but they should have appealed from the original orders. In this case the order of June 11th was *ex parte* and the petition to have it rescinded was filed within thirty days from its date. The principle announced in *Redman* v. *Chance*, 32 Md. 42, is therefore applicable. It was there held that when the appointment of a guardian was made *without notice* to the father or mother (if

there be no father) the party aggrieved was not confined to an appeal directly from the order making the appointment, but could by petition or other proceeding in the Orphans' Court impeach the regularity and validity of the appointment, but it must be filed within thirty days after actual knowledge of the order making the appointment. It is true that in that case there was a statute requiring notice, but the Court said "This general principle has been repeatedly recognized in Courts of law and equity, where parties have been allowed, by an independent proceeding, to impeach judgments and decrees *rendered without notice*."

Nor can the fact that this petition was dismissed "without prejudice" justify the dismissal of the appeal. Ordinarily an order dismissing a bill or petition is not considered final, and hence cannot be reviewed, but this petition and answer properly submitted a question to the Court that should have been passed on. Such facts as are necessary to entitle the appellant to relief were alleged in the petition and admitted in the answer, and if. he filed another petition he could only repeat, in substance, the same facts and if he was entitled to relief on those facts he *was prejudiced* by having the petition dismissed and the mere addition of the words "without prejudice" cannot under those circumstances prevent him from prosecuting his appeal. The general rule applicable to bills in equity is thus stated in 6 *Ency. of Pl. and Pr.*, 996, "A dismissal of a bill in equity without prejudice will not be reviewed unless the error is very clear,"—thus implying that when it is very clear it will be reviewed. But if the allegation in the answer is correct that the appellant had notice that the order was passed on June 11th, another petition filed after the order of July 18th, when this one was dismissed, would have been met by the objection stated above that such petition should be filed within thirty days from actual knowledge of the order, and therefore the dismissal of this petition did clearly prejudice the rights of the appellant, and he is entitled to have the order reviewed.

Nor did sec. 241 of Art. 93 of the Code prevent the appel-

lant from adopting the form of relief he relied on, as suggested by the counsel for appellees. That authorizes a joint administrator or executor to institute proceedings when he "shall apprehend that he is likely to suffer by the negligence or misconduct in the administration, improper use, or misapplication of the assets of the estate by any executor or administrator," and if it is well founded the Court has authority to revoke the power and authority of the executor or administrator complained of, but that section has no application to this case and secs. 1 and 2 of Art. 90, providing for counter security, are likewise wholly inapplicable. The motion to dismiss will be overruled.

The discussion of the merits of the case covered much more ground than the admitted facts require. It is not necessary to determine how far one or more of a number of executors can act without the co-operation of the others. It must be conceded that for many purposes the act of one is binding upon all, and after the statutory period has been reached when it is their duty to state an account, one of three executors should not be permitted to unnecessarily postpone the settlement of the estate. But under our statute creditors have six months within which to file their claims and it is admitted that there is an outstanding claim of $95,000 due by this decedent. It is true there is a mortgage on the real estate intended to secure it, but that does not prevent the creditor from holding the personal property responsible for the debt. The appellant and John A. Yakel, as we have seen, gave a joint bond and are sureties on that of Mrs. Yakel. Under those circumstances upon what principle can the appellees settle an account distributing the personal estate of the testator within six months, without the consent of the appellant? "Where joint administrators unite in the same testamentary bond, they are jointly and severally answerable, not only each for his own acts, but also each for the acts of the other. When they do not design to place themselves in that attitude, they should execute separate bonds." *Clarke v. State,* 6 G. & J. 288. The creditors of Louis Yakel have the

right to look to the personal property that came into the hands of his executors for the payment of their debts. Under our system, executors qualify in the Orphans' Court and usually account there for the personal property of their testator. The Code provides for notice to creditors, for the method of proof of claims, for their payment and for distribution of the surplus after the debts are paid. No administrator or executor can distribute the surplus before the expiration of the six months provided for in the statute without making himself and his sureties liable to creditors. It is true that they sometimes take that risk and settle their accounts before the expiration of the statutory period, but that is a risk which each one must take for himself and one cannot require his co-executor, who has given a joint bond with him, to do so. The bond given by George and John A. Yakel would not be discharged because John A. and Margaret Yakel had settled an account and distributed the surplus to John A. Yakel, trustee. It matters not that the creditors could follow the funds into the hands of the trustee; they are not required to do so and when the time arrived for the payment of the debts they could demand payment of the executors (to the extent of the personalty that came into their hands and was liable for the debts) and hold the bond responsible, if default be made. That being so, the Orphans' Court should have rescinded the order of June 11th, 1902, and should not have dismissed the petition of the appellant and we must therefore reverse the order of July 18th, 1902.

It is always desirable that estates be settled as speedily as they can properly be, and as the six months have now expired, if the allegations in the answer of John A. Yakel be correct that the Fidelity and Deposit Company of Maryland desires the account to be settled, so that the trustee may be in possession of the whole estate, there ought to be no difficulty in arranging for that claim so that the account can be stated at once. As we will direct the costs to be paid out of the estate, it is not necessary to pass on the motion to expunge the supplemental record.

*Order of July 18th, 1902, reversed, and cause remanded, the costs to be paid out of the estate.*

(Decided January 15th, 1903.)