STANISLAWA WLODAREK *v.* EVA WLODAREK
[Nos. 26, 27, October Term, 1934.]

*Decided November 22, 1934.*

The causes were argued before BOND, C. J., URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*Joseph Loeffler,* with whom were *Benjamin Unger* and *William J. Stocksdale* on the brief, for the appellant.

*Avrum K. Rifman,* with whom were *Stewart M. Yeatman* and *Joseph Bernstein* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The two appeals on this record are from a decree overruling two demurrers to the amended bill of complaint of Eva Wlodarek, widow of Stanislaus Wlodarek, deceased, against Stanislawa Wlodarek, Sofie Kwiatkevoski, Alexander J. Lane, executors of the will of Stanislaus Wlodarek, deceased, Thomas J. Grattan, and Stanislawa Wlodarek, also known as Elizabeth Wlodarek, individually, defendants. The two demurrers were on identical grounds and were interposed by Stanislawa Wlodarek, but one was filed in her own behalf and the other in her representative capacity as one of the three executors of Stanislaus Wlodarek. An appeal was taken on each ruling. The plaintiff has filed a motion to dismiss the appeal in the representative capacity on the ground that one of the three co-executors may not appeal. In the instant cause, the two other executors had answered the amended bill of complaint.

The amended bill of complaint is wordy and unnecessarily burdened with detail. An analysis of its substantial averments discloses that it charges a marriage of the plaintiff, a widow, with Stanislaus Wlodarek, a widower, on December 2nd, 1922, when the spouses were each near the age of sixty-eight years. Before their marriage, the plaintiff had lived with her widowed daughter, where she was courted by the widower for some six months; and they became engaged five or six weeks prior to their marriage. The plaintiff had worked for sixteen years in a menial position with a public service corporation, which, in four years more, would have retired her on a pension of eight dollars a week during the remainder of her life.

Her future husband had her leave this service and sacrifice her prospective pension to become his wife. The day before the ceremony, the widower took his betrothed to his home at 419 South Durham Street, Baltimore, and while there a man, who was unknown to the plaintiff, called, and he and the prospective husband requested her to sign a paper. She inquired what they wanted from her, as she did not owe any one, and her future husband told her that she should sign her name, and the property in which he resided, where they all were at the time, and in which the couple intended to live, would be her property when he died. In the belief that this representation was a fact, the plaintiff signed the paper at the foot of the page as directed, and without being informed or knowing its actual contents, but believing the instrument was as stated to her. After the plaintiff signed, she never saw the document again, nor had a copy.

The plaintiff was of German birth, and could neither read nor write English, and was only able to sign her name, as her education was one year in a German school. In addition, she was wholly unexperienced in all business transactions, while the prospective husband had been a builder and contractor for a great many years, and was accustomed to the methods of business and the making of contracts. The third person present at the transaction was the representative of the husband, and there was no one there with whom the plaintiff could consult with reference to her execution of the proffered writing, nor was there any opportunity afforded for her to consult any member of her family or a legal adviser, in regard to the effect of the paper which she was urged to execute, although her betrothed knew she was illiterate and inexperienced in business matters, and dependent upon him for advice and guidance.

The day after this document was executed, the wedding took place without any member of the wife's family being present. From the time of the marriage until the husband's death on July 26th, 1933, the pair lived together in the husband's home, without the wife knowing or sus-

pecting the real nature of the instrument which she had signed. On July 17th, 1933, an operation for cancer was performed on the husband; and on the following July 26th the husband died, leaving a purporting will bearing date July 20th, 1933, which was in the custody of Alexander J. Lane, an attorney at law and one of the executors, from its execution until it was probated on August 4th, 1933. By this will, the surviving wife was bequeathed the sum of $200; three grandchildren $300; three of his children $100 each; and a fourth child and her husband $500 each; and all the residue of his estate was devised and bequeathed to his other daughter, Stanislawa Wlodarek. The residuary legatee, his daughter receiving a bequest of $500, and Alexander J. Lane, were made the executors.

On October 5th, 1933, the widow filed a caveat to the will on the grounds of fraud, undue influence, and mental incapacity, and the defendants answered in denial. Simultaneously with the filing of the caveat, the widow began proceedings in equity for an assignment of dower in certain fee simple property of which she alleged her husband had died seised and possessed. On November 21st, 1933, the defendant executors filed a supplemental answer to the petition and caveat setting up by way of further defense that, by reason of an antenuptial contract between the plaintiff and her husband, she had no right to object to the probate of the will of the husband. On the same ground that the wife had no interest in the real estate of the husband by reason of an antenuptial agreement, the defendants resisted her suit to have her dower assigned.

An investigation by her counsel resulted in the plaintiff learning that the paper writing which she had signed on December 1st, 1922, upon the representation that it would assure her the home of her husband, after his death, was, in form and effect, an antenuptial agreement that had been recorded among the Land Records of Baltimore City on March 5th, 1927. At the time of the execution of this contract, the prospective wife had no real property of any kind, as the intended husband knew, and her personalty

consisted of her accumulated savings of $3,000. The prospective husband owned a leasehold estate in a lot whereon the yearly ground rent issuing therefrom was $19, and three valuable fee simple lots, two of which were improved by brick residences, and one of which was the home in which he had lived, and where he had taken his wife after marriage. In addition to this real and leasehold property, the future husband had savings accounts and bank deposits that made his net aggregate wealth approximately $20,000. The antenuptial contract was that the prospective husband and wife should, after the marriage, each continue to possess and enjoy all his or her existing and future real and personal property, with full power, without the joinder of the other, to dispose of the same absolutely or conditionally by deed or will, notwithstanding coverture, as fully as though each had remained single; and that, upon the death of either, the survivor should have no estate, interest, nor part in the real or personal property of which the one dying was seised, possessed, or entitled; and that either prospective spouse would execute such instruments as might be required to enable the other to convey, assign, transfer, or otherwise deal with the separate property with the same effect in law as if done by a single person.

For the purpose of making a disposition of his real and leasehold property, in accordance with the right and power agreed in the antenuptial contract, the husband, on March 15th, 1929, conveyed all his fee simple and leasehold property to a certain Thomas J. Grattan, without consideration and solely as a conduit of title. At the same time, Grattan reconveyed, without consideration, all these fee simple and leasehold lots unto the husband for the term of his natural life, with full power to convey, grant, assign, lease, mortgage, or dispose of by will any or all of said lots, including therein not only his own life estate but also the estates of the remaindermen, and, if not so disposed of, then, upon the death of the husband, unto his daughters, Stanislawa Wlodarek or Gilden, also known as Elizabeth Wlodarek, and Lilly Majchrzak (*née* Wloda-

rek), their heirs, personal representatives, and assigns absolutely. After the description of the three freehold lots and the leasehold lot conveyed, there followed the declaration that the first and secondly described freehold lots, known as No. 416 South Wolfe Street, and the fourthly described leasehold lot, known as No. 604 South Wolfe Street, were granted in remainder to Stanislawa Wlodarek after the death of the father, unless disposed of by him in his lifetime; and that the thirdly described lot in fee simple, known as 419 South Durham Street, was granted in remainder to Lilly Majchrzak (née Wlodarek) after the death of her father, if not disposed of by him in his lifetime.

Following this last deed, the husband, without any consideration, granted on April 7th, 1930, the fee simple lot known as 419 South Durham Street to his daughter, Stanislawa Wlodarek, with the reservation of the absolute right to dispose of or incumber the property by deed, lease, mortgage, or will, during his natural life, and if not so disposed of in his lifetime then immediately after his death to Stanislawa Wlodarek, her heirs and assigns absolutely. As a result of this grant the husband had conveyed all his real and leasehold property, with a purporting reservation of the right to dispose of or incumber the same by deed, lease, mortgage, or will during his life, and, if not so disposed of then over to his daughter, Stanislawa Wlodarek, her heirs and assigns.

Some six years before the death of the husband, his daughter Stanislawa Wlodarek moved into the 416 South Wolfe Street property, which was in the rear of the residence of the plaintiff and her husband. The daughter paid no rent and obtained a dominant and controlling influence over her aged father, which was so exercised that it culminated in the procurement of the recited conveyances which granted to his daughter, after her father's death, all the real and leasehold property remaining undisposed of by him pursuant to the power reserved in said conveyances. These grants were unknown to the wife, and were made pursuant to a combination of all

the parties to the deeds for the purpose of depriving the wife of her dower in the fee simple property and her rights as surviving widow in the leasehold estate; and, at the same time, of retaining for the husband the full and complete use and enjoyment of the property during his life, with the power in him during his life to sell, mortgage, lease, incumber, convey, and dispose of it by deed or will.

The wife and the husband lived together harmoniously and she had complete confidence in him. She performed all the domestic duties, and loaned him, from time to time, money to the extent of $1,800 out of her savings in bank. At his death the husband was worth about $20,000, inclusive of the real and personal estate mentioned in this statement of the amended bill of complaint, which had been appraised at $6,000.

The facts here stated are those upon which the amended bill of complaint seeks the relief; (a) Of having the court assume jurisdiction of the administration of the estate of the decedent; (b) of annulling the antenuptial contract; (c) of annulling the deed of the decedent to Thomas J. Grattan and the deed of Thomas J. Grattan to the decedent for life with remainder over to Stanislawa Wlodarek and Lilly Majchrzak, and the deed of the decedent to Stanislawa Wlodarek, with reservation of life estate and various powers to decedent; (d) of assigning to the plaintiff her dower in the decedent's real estate and securing her share in the personal estate of the decedent; (e) of having the executors named in the will of decedent make a discovery and an accounting of the estate of the decedent; (f) of enjoining the executors of the decedent and Stanislawa Wlodarek from conveying, incumbering, or in any manner disposing of any of the property or assets arising out of the estate of the said Stanislawa Wlodarek; and (g) of obtaining general relief.

The reasons assigned on the brief of the appellant for the demurrer are: First, that the amended bill of complaint is multifarious, because the appellant, Stanislawa

Wlodarek, is a defendant individually and in a representative capacity as one of the executors of Stanislaus Wlodarek; and, secondly, that the bill of complaint does not state adequately any equity in the plaintiff's cause, because the allegations fail to allege any acts of undue influence by Stanislawa Wlodarek, or any facts from which undue influence could be inferred.

1. The theory developed by the facts alleged by the amended bill of complaint is that the decedent practiced a fraud upon the plaintiff's future marital rights in obtaining the antenuptial contract through misrepresentation of its nature to an illiterate, uninformed, unadvised, and confiding woman, in a fiduciary relation with the decedent by reason of their betrothal; and that the series of deeds, which were subsequently executed without consideration by the decedent and his straw man, whereby there were ultimately grants over in contingent remainder of all his real and leasehold property to Stanislawa Wlodarek, were, in fact, deeds in furtherance of the original scheme to defraud the plaintiff of her marital rights, and that the daughter was, in the fraud, both a guilty participant and beneficiary. Moreover, she would be adversely affected in her title and as residuary legatee by the relief sought. So, she was properly made a party in her individual capacity. Furthermore, the annulment of the antenuptial contract, and the deeds of the leasehold and real property of the decedent, would cast the title to the leasehold estate upon Stanislawa Wlodarek and her two co-executors for the purposes of administration and devolution of title as part of the assets of decedent's estate, and would restore the marital rights of the surviving widow in all the personalty of which the testator would be possessed at the time of his death. The executors of the decedent were, accordingly, necessary parties defendant in a cause whose purpose was to assert what was an adverse interest and demand against the decedent's personal estate, upon the assumption, which the executors were bound to make, until otherwise informed or the contrary adjudged, that the acts of the testator were not

fraudulent. If the decedent were alive, and the plaintiff had begun the suit for the annulment of the prenuptial settlement, he would no more clearly have been an indispensable party than his executors, as his personal representatives, now become after his death when a like suit is commenced. The rule that the same party cannot be sued in different capacities, as where a demand is made against a defendant as executor with one against him in his private capacity, does not have application to this record. *Fried v. Burk*, 128 Md. 553, 554, 97 A. 909. The gravamen of the allegations is the primary fraud of the prospective husband upon the marital rights of his future wife; and the succession of conveyances by the husband, in which the daughter was a guilty actor and beneficiary, was a series of auxiliary, not independent, frauds. The joint liability of the father and the daughter sprang from their single purpose to defraud the wife. The circumstance that the perpetration of a common wrongful design embraced different, but not distinct, conveyances does not destroy the unity of the subject-matter. It is not necessary that every defendant have an interest in all the matters contained in the bill, provided that every defendant has an interest in some material matters in the suit and that they are all connected with the others. Here the demand against Stanislawa Wlodarek in her private character and as one of the executors of her father is not separate and distinct in its subject-matter, but grows out of the common fraud of father and daughter committed against the marital rights of the wife. In neither capacity is the daughter called upon to defend unconnected matters, and her appearance in both capacities is necessary to give complete relief with respect to matters which are necessarily related to one another. *Millers' Equity Proc.*, secs. 110, 111; *Williams v West*, 2 Md. 174, 198; *Winn v. Albert*, 2 Md. Ch. 42, 48; *Trego v. Skinner*, 42 Md. 426, 431, 433; *Collateral Security Bank v. Fowler*, 42 Md. 393, 401, 402; *Brian v. Thomas*, 63 Md. 476, 480-483; *Regester v. Regester*, 104 Md. 359, 361-363, 65 A. 12; *Whitman v. United Surety Co.*, 110 Md. 421, 428-430, 72 A. 1042;

*Ruhe v. Ruhe,* 113 Md. 595, 599-603, 77 A. 797; *Scher v. Becker,* 163 Md. 199, 203-205, 161 A. 167; *Jaworski v. Wisniewski,* 149 Md. 109, 118-120, 131 A. 40; *Collins v. Collins,* 98 Md. 473, 478, 482, 57 A. 597; *Figinski v. Modrak,* 151 Md. 144, 145, 134 A. 130; *Beachey v. Heiple,* 130 Md. 683, 690, 691, 101 A. 553; *Sears v. Barker,* 155 Md. 323, 329, 330, 141 A. 908; *Atlantic Corporation v. Waxman,* 162 Md. 191, 197, 198, 159 A. 593.

2. The second point upon which the demurrer is founded is that the amended bill of complaint fails to allege any acts of undue influence by the daughter Stanislawa Wlodarek, or any facts upon which undue influence could be inferred. The plaintiff, however, disclaims that she relies upon undue influence as a basis for relief, and if the allegations with reference to this cause of complaint are struck from the bill of complaint, the remaining averments of the bill of complaint are sufficient to compel an answer, and this is all that is required for the overruling of the demurrer. *Murphy v. Penniman,* 105 Md. 452, 458, 459, 66 A. 282.

The plaintiff, moreover, disclaims that the bill of complaint proceeds upon the theory of undue influence, and maintains that the relief sought is founded on fraud. It is not necessary, therefore, to pass upon the adequacy of the allegations in regard to undue influence, since they may be taken and considered in connection with the statement of the fraud charged. The amended bill of complaint apprises the defendants of the claim made. The facts alleged bring the complaint within the scope of equitable relief for fraud in that large class of cases where an ignorant, illiterate, and trustful party, in a fiduciary relation with the wrongdoer and without the aid of independent advice, is induced, through fraudulent misrepresentations, to execute a document, which the party is unable to read and which is not read aloud, and which deprives the betrayed party of valuable property rights without consideration. *Farmer v. O'Carroll,* 162 Md. 431, 444, 445, 160 A. 12; *Coburn v. Shilling,* 138 Md. 177, 199, 113 A. 761; *Zimmerman v. Frushour,* 108 Md. 115, 69 A.

796; *Chase v. Grey*, 134 Md. 619, 623, 107 A. 537; *Tucker v. Osbourn*, 101 Md. 613, 619, 61 A. 321; *Jaworski v. Wisniewski*, 149 Md. 109, 115, 116, 119, 120, 131 A. 40; *Scott v. Keane*, 87 Md. 709, 719, 40 A. 1070; *Mercantile Trust Co. v. Bergdorf & Goodman Co.*, 167 Md. 158, 173 A. 31; *Boland v. Ash*, 145 Md. 465, 477, 125 A. 801; *Scott v. Marden*, 153 Md. 1, 7-11, 137 A. 518; *Beachey v. Heiple*, 130 Md. 683, 689-691, 101 A. 553; *Sears v. Barker*, 155 Md. 323, 329, 330, 141 A. 908; *Scher v. Becker*, 163 Md. 199, 161 A. 167.

3. The testator named three executors, and all qualified and are acting in this representative capacity. Two of the executors filed separate answers to the amended bill of complaint, and these answers were later followed by a demurrer filed by Stanislawa Wlodarek in her personal character and another in her representative capacity, but the grounds of the demurrer were identical. The chancellor heard each demurrer and overruled both, and separate appeals were taken from each ruling. The motion to dismiss the appeal in the capacity of an executor is based upon the contention that where two of three executors answer a bill of complaint and one demurs and his demurrer is overruled, he may not appeal in his capacity of co-executor, since the appeal is the act of but one of three executors. In support of the position taken, the case of *Kirkpatrick v. Lewis*, 159 Md. 68, 149 A. 614, in which this court has held that in matters involving judgment and discretion, trustees appointed by the court to sell land for the purpose of making a partition sale may decide by a majority the price at which property shall be sold. In the case of conventional trustees, although they are administering the trust under the jurisdiction of the court, it has been held that one conventional trustee, who is with his co-trustee a party to the cause, may not, as a rule, enter an appeal without the union of his co-trustee. *Kramme v. Mewshaw*, 147 Md. 535, 552, 553, 128 A. 468; *Donovan v. Miller*, 137 Md. 555, 112 A. 926. The two principles applied in the two cases cited do not apply to the appeal at bar, for the reason that the right of appeal

in two or more trustees is different from that in a plurality of executors, because while conventional trustees have all equal and undivided power, interest, and authority, and, so, must generally join in all their acts in a fiduciary capacity, executors have the power to act separately and, therefore, may incur separate liability. *Supra*: *Latrobe v. Tiernan*, 2 Md. Ch. 480; 3 *Story's Eq.* (14th Ed.) secs. 1689-1692; *Perry on Trusts* (7th Ed.) secs. 421-425. So, an executor has the right to plead separately. *Dicey on Parties to Actions*, 322 (marginal paging).

Independently of a statutory modification, the difference between conventional trustees and executors is the difference between the trustees, having for the most part a joint power, and the executors, having a several power, over the estate. *Supra.* It follows that an executor's right of appeal does not depend upon the joinder of the co-executor. *Hesson v. Hesson*, 14 Md. 8, 13, 14; *Yakel v. Yakel*, 96 Md. 240, 245, 53 A. 914; *Strasbaugh v. Dallam*, 93 Md. 712, 715, 50 A. 417; *Hoffman v. Hoffman*, 88 Md. 60, 40 A. 712; *Forney v. Shriner*, 60 Md. 419; *Gardiner v. Hardey*, 12 G. & J. 365, 384; *Bagby on Executors and Administrators* (2nd Ed.) sec. 170, p. 308. *Schouler on Wills*, (6th Ed.) sec. 2233; *Woerner on Law of Administration*, sec. 544; *French v. Peters*, 177 Mass. 568, 572, 59 N. E. 449.

The general right of an executor to appeal is not unqualified. An executor has no standing on an appeal from a decree determining general administrative questions, and not pecuniarily affecting him in his representative capacity or his testator's estate. While executors may plead different pleas, that which is most to the advantage of the estate of the testator shall be received. In the cause at bar, the executor who appealed pleaded separately, as executor and in her personal character, by way of demurrer, which was on the theory that all the complaint alleged was true, but insufficient to show an equity in the plaintiff. Another executor filed an answer which denied the material allegations of the bill. The third executor filed a combined demurrer and answer. In this situation,

the pleading of the executor which combined a demurrer and an answer should have been received as the one most advantageous to the testator's estate, and the cause heard, so far as the executors are concerned, on that pleading. 3 *Williams on Executors* (7th Am. Ed.) 522 (\*1834, \*1835) ; *Elwell v. Quash,* 1 Stra. 20, 93 Eng. Reprint, 358, 359; *Lepard v. Vernon,* 2 Veas. & B., 51, 35 Eng. Reprint, pp. 237-239; 11 *R. C. L.,* title *Executors and Admrs.,* sec. 504, p. 415; *Haskell v. Manson,* 200 Mass. 599, 86 N. E. 937; *Murray v. Hurst,* 163 Md. 481, 490, 491, 163 A. 183, and supporting cases in annotations found in 85 *A. L. R.* pp. 449-451.

It follows that the executor who appealed was not prejudiced by the court's action in overruling her demurrer, as it left in the cause the combined demurrer and answer of another executor; and the interests of the appellant as remainderman were preserved by the appeal taken from the ruling on the demurrer of the appellant in her individual capacity.

For this reason the appeal of the appellant as executor will be dismissed, as she, as executrix, is in no way aggrieved.

> *Appeal in No. 26 dismissed, with costs to the appellee; and decree in No. 27 affirmed, with costs to the appellee.*