640 A.2d 1120

Susanne E. COOPER, Personal Representative
of the Estate of Helen Virginia Bikle

v.

Josef F. BIKLE.

No. 128, Sept. Term, 1993.

Court of Appeals of Maryland.

May 11, 1994.

610

Bradford G.Y. Carney and Janet A. Shearer (Weinberg and Green, all on brief), Baltimore, for appellant.

Mark D. Thomas (Meyers, Young & Grove, P.A., all on brief), Hagerstown, for appellee.

Argued before ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ., and CHARLES E. ORTH, Jr.,* Judge of the Court of Appeals (retired) Specially Assigned.

CHASANOW, Judge.

Susanne E. Cooper and Richard A. Bikle are the co-personal representatives of the Estate of Helen Virginia Bikle. In that capacity, they brought a tort action against Josef F. Bikle for fraud, conversion and conspiracy.[1] The plaintiff's complaint alleged that Josef Bikle and the now-deceased Austin H. Bikle, who was Helen Virginia Bikle's husband, fraudulently converted approximately $70,000.00 from certain joint accounts held by Austin and Helen Bikle. Josef Bikle denied these allegations, and sought to have the action dismissed for failure to join the Estate of Austin H. Bikle as a necessary party defendant. The Circuit Court for Washington County granted the defendant's motion to dismiss and the plaintiff appealed. Before the Court of Special Appeals could resolve the matter, this Court issued a writ of certiorari to decide the following issues:

---

* Orth, J., retired, and specially assigned, participated in the hearing and conference of this case but died prior to the filing of this opinion.

1. Susanne Cooper and Richard Bikle filed their complaint collectively as the co-personal representatives of the Estate of Helen Virginia Bikle, but only Susanne's name appears on the Notice of Appeal and the appellate briefs. For clarification, therefore, we shall hereinafter refer to these parties as either "Susanne Cooper" singularly or "plaintiff."

1. Does the trial court's dismissal of an action without prejudice, for failure to join a necessary party defendant, constitute a final and appealable judgment; and

2. Did the trial court err in dismissing this action for failure to join as necessary party defendants, Susanne E. Cooper and Josef F. Bikle, the co-personal representatives of Austin H. Bikle's estate?

## I.

The facts alleged by the parties in the instant case are as follows. Decedents Helen Virginia Bikle and Austin H. Bikle were married on July 18, 1938. During their marriage, Austin and Helen Bikle owned various accounts as "joint tenants with the right of survivorship" at the Hagerstown Trust Company and the Columbia First Federal Savings and Loan Association.

On August 14, 1981, Helen Bikle executed a Durable Power of Attorney that named her granddaughter, Susanne E. Cooper, and William E. Cooper as her co-attorneys in fact, and granted to them all powers necessary to properly manage her financial affairs. Six years later, Helen Bikle was adjudged disabled according to Maryland law, and Austin Bikle was appointed the guardian of her person and property. By a subsequent order of the Circuit Court for Washington County, dated July 30, 1991, Susanne Cooper was appointed the substitute guardian of Helen Bikle. That order also terminated Austin Bikle's appointment as the guardian of Helen Bikle's property in favor of Susanne and William Cooper, Helen's co-attorneys in fact.

The plaintiff alleges that between January 5, 1989 and July 24, 1989, while Austin Bikle was the guardian of Helen Bikle's person and property, he improperly withdrew a sum in excess of $70,000.00 from the joint accounts held by himself and Helen without her knowledge or consent and transferred these funds into an account jointly held with his brother, Josef Bikle. Austin and Josef Bikle held the new account as joint tenants with a right of survivorship. On August 27, 1990, Austin Bikle

died and the funds in his joint account with Josef Bikle became the sole property of Josef pursuant to the joint tenancy's right of survivorship and without probate by the Estate of Austin H. Bikle. Subsequently, on January 22, 1992, Helen Virginia Bikle also died. Susanne Cooper and Josef Bikle were appointed the co-personal representatives of Austin Bikle's estate. Susanne Cooper and Richard Bikle were appointed the co-personal representatives of Helen Bikle's estate.

On or about March 10, 1992, Susanne Cooper and Richard Bikle, in their capacity as the co-personal representatives of Helen Bikle's estate, filed a complaint against Josef Bikle in the Circuit Court for Washington County. The three-count complaint claimed fraud, conversion, and conspiracy, arising out of the allegedly wrongful transfer of funds in excess of $70,000.00 from the joint accounts of Austin and Helen Bikle into the joint account of Austin and Josef Bikle. Josef Bikle filed an answer and moved to dismiss the complaint for failure to join the Estate of Austin H. Bikle as a necessary party defendant.

The Circuit Court for Washington County granted the defendant's motion to dismiss the complaint without prejudice and with leave to amend within thirty (30) days in order to join Susanne Cooper and Josef Bikle, the co-personal representatives of the Estate of Austin H. Bikle, as necessary party defendants. The plaintiff elected not to amend her complaint by adding an additional party, and after thirty (30) days expired, she filed a Notice of Appeal to the Court of Special Appeals. The intermediate appellate court ordered the appellant to show cause why the appeal should not be dismissed for lack of a final judgment. The appellant filed a response to the Order to Show Cause, and on December 9, 1992, the Court of Special Appeals dismissed the appeal and remanded the case to the circuit court for entry of a final judgment.

The circuit court failed to enter a final judgment in the action. Consequently, on February 3, 1993, the plaintiff filed a motion seeking an order of dismissal with prejudice and the

entry of a final judgment. The defendant filed an opposition to the motion, and argued that the action should be dismissed without prejudice. While the motion was still pending, this Court rendered its decision in *Moore v. Pomory,* 329 Md. 428, 620 A.2d 323 (1993), which held that a dismissal without prejudice is a final and appealable judgment. Based on that decision, the plaintiff withdrew her motion for a dismissal with prejudice and asked that the case be dismissed without prejudice. On July 2, 1993, the Circuit Court for Washington County dismissed the action without prejudice. On July 19, 1993, the plaintiff filed a timely Notice of Appeal to the Court of Special Appeals. Prior to the intermediate appellate court's resolution of the case, we issued a writ of certiorari to consider the issues presented.

## II.

The defendant in the instant case first contends that this appeal should be dismissed pursuant to Maryland Rules 8–602(a)(1) and 8–603(c) for want of a final judgment.[2] In light of our decision in *Moore v. Pomory,* 329 Md. 428, 620 A.2d 323 (1993), we disagree with that contention.

The plaintiffs in *Pomory* filed a tort action in the Circuit Court for Baltimore City, and the action was subsequently dismissed without prejudice for failure to state a claim upon which relief could be granted. 329 Md. at 429–30, 620 A.2d at 324. *See* Maryland Rule 2–322. The plaintiffs appealed the circuit court's decision to the Court of Special Appeals, which

---

**2.** Pertinent portions of Maryland Rules 8–602 and 8–603 provide as follows:

"**Rule 8–602. DISMISSAL BY COURT**

(a) Grounds.—On motion or on its own initiative, the Court may dismiss an appeal for any of the following reasons:

(1) the appeal is not allowed by these rules or other law. . . ."

"**Rule 8–603. MOTION TO DISMISS APPEAL**

\*  \*  \*  \*  \*  \*

(c) Included in Appellee's Brief.—A motion to dismiss based on subsection (a)(1), (2), (3), (9), or (10) of Rule 8–602 may be included in the appellee's brief. The appellant may include in a reply brief any response to the motion."

held that "a dismissal of an entire action 'without prejudice' was the same as a dismissal 'allow[ing] leave to amend,' and, as such, 'it was interlocutory and not an appealable final judgment.'" *Pomory,* 329 Md. at 430, 620 A.2d at 324–25 (quoting the unreported opinion of the Court of Special Appeals).

This Court agreed with the intermediate appellate court's conclusion that an order dismissing a complaint with leave to amend is not a final appealable judgment. *Pomory,* 329 Md. at 431, 620 A.2d at 325 (citing Maryland Code (1974, 1989 Repl.Vol.), Courts and Judicial Proceedings Article, § 12–301 (providing a right of appeal from final judgments)). Notwithstanding that observation, this Court also declared the following:

> "On the other hand, an order dismissing or granting a motion to dismiss a plaintiff's entire complaint, without granting leave to amend, and where there are no counterclaims, cross-claims or third-party claims, puts the plaintiff out of court and terminates the particular action in the trial court. This is true regardless of whether the dismissal was with or was without prejudice.
>
> *    *    *    *    *    *
>
> The effect of the designation 'without prejudice' is simply that there is no adjudication on the merits and that, therefore, a new suit on the same cause of action is not barred by principles of res judicata." (Citation omitted).

*Pomory,* 329 Md. at 431–32, 620 A.2d at 325. Consequently, this Court held that "[t]he order ..., dismissing the entire complaint without prejudice, was a final and appealable judgment." *Pomory,* 329 Md. at 433, 620 A.2d at 326.

■ The relevant facts and circumstances of *Pomory* are virtually identical to those of the case before us. The circuit court judge in the instant case dismissed the plaintiff's entire complaint without prejudice. There are no other counterclaims, cross-claims or third-party claims pending in this action. Thus, this particular action was terminated, and the plaintiff was put out of court. This is true regardless of

whether the dismissal was with or was without prejudice. *See Pomory,* 329 Md. at 431–32, 620 A.2d at 325. We therefore hold that the dismissal without prejudice of this action on July 2, 1993 was a final and appealable judgment.

## III.

Our analysis of whether Austin Bikle's estate is a necessary party defendant depends upon the required joinder provisions of Maryland Rule 2–211(a):

> **"Rule 2–211. REQUIRED JOINDER OF PARTIES**
>
> **(a) Persons to be Joined.**—Except as otherwise provided by law, a person who is subject to service of process shall be joined as a party in the action if in the person's absence
>
> (1) complete relief cannot be accorded among those already parties, or
>
> (2) disposition of the action may impair or impede the person's ability to protect a claimed interest relating to the subject of the action or may leave persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations by reason of the person's claimed interest."

As the defendant recognizes, Maryland Rule 2–322(b) provides that the defense of failure to join a necessary party under Rule 2–211 may be raised in a pre-answer motion to dismiss. Pursuant to Rule 2–322(c), the court may dismiss the action or grant the plaintiff leave to amend the complaint. "If leave to amend is granted and the plaintiff fails to file an amended complaint within the time prescribed, the court, on motion, may enter an order dismissing the action." Md.Rule 2–322(c).

As we said in *Mahan v. Mahan,* 320 Md. 262, 577 A.2d 70 (1990), "[t]he primary purposes of [Rule 2–211's] requirement that necessary parties be joined are 'to assure that a person's rights are not adjudicated unless that person has had his "day in court" ' and, to prevent 'multiplicity of litigation by assuring a determination of the entire controversy in a single proceeding.'" 320 Md. at 272, 577 A.2d at 75 (quoting *Bender v. Sec., Dep't of Personnel,* 290 Md. 345, 351, 430 A.2d 66, 69–70

(1981)). *See Reddick v. State,* 213 Md. 18, 29–30, 130 A.2d 762, 767–68, *cert. denied,* 355 U.S. 832, 78 S.Ct. 50, 2 L.Ed.2d 44 (1957). *See also* 7 Charles A. Wright et al., *Federal Practice and Procedure: Civil 2d* § 1602, at 21 (1986) (interpreting Fed.R.Civ.P. 19, from which Md.Rule 2–211 is substantially derived, as "designed to protect the interests of absent persons as well as those already before the court from multiple litigation or inconsistent judicial determinations").

### A.

As to the requirement of Rule 2–211(a)(1), we believe complete relief can be accorded among those who are already parties to this action. In arguing to the contrary, the defendant claims that "evidence pertaining to the source and use of [the] funds before and after their withdrawal from the [joint accounts of Austin and Helen Bikle], as well as evidence of the origins and use of the funds in the [subsequent joint account of Austin and Josef Bikle], is critical not only to establishing whether a fraud upon Helen V. Bikle ever occurred but also to proving that the funds in the Second Account[ ] constitute the proceeds of the First Accounts."

To respond to this contention, we must first assume the facts as asserted by the non-moving party (*i.e.,* the plaintiff). This proposition was summarized as follows in *Sharrow v. State Farm Mutual,* 306 Md. 754, 511 A.2d 492 (1986):

"Under Md.Rule 2–322, a motion to dismiss for failure to state a claim serves the same function as the demurrer under former Rules 345 and 371 b. Consequently, in considering the legal sufficiency of Sharrow's complaint to allege a cause of action for tortious interference, we must assume the truth of all relevant and material facts that are well pleaded and all inferences which can be reasonably drawn from those pleadings." (Citations omitted).

306 Md. at 768, 511 A.2d at 499–500. The Court in *Sharrow* continued, however, by noting that "any ambiguity or uncertainty in the allegations bearing on whether the complaint states a cause of action must be construed against the plead-

er." 306 Md. at 768, 511 A.2d at 500. The Court finally concluded as follows:

> "There is, of course, a big difference between that which is necessary to prove the commission of the tort and that which is necessary merely to allege its commission. We think, therefore, in the circumstances that all [the] counts of the complaint, although lacking in desired specificity, are barely adequate to allege a claim...."

*Sharrow*, 306 Md. at 770, 511 A.2d at 500–01.

Like *Sharrow*, much of the case law regarding this issue deals with motions to dismiss for failure to state a claim as opposed to motions to dismiss for failure to join a necessary party. Nevertheless, we consider the reasoning of these decisions applicable to the instant case insofar as it pertains to acceptance of the facts alleged by the non-moving party. *See Berman v. Karvounis*, 308 Md. 259, 264, 518 A.2d 726, 728 (1987) (stating that, "[s]ince we are dealing with a motion to dismiss, we consider [the plaintiffs'] well-pleaded allegations in the light most favorable to them"); *Flaherty v. Weinberg*, 303 Md. 116, 135–36, 492 A.2d 618, 628 (1985) (stating that in order "[t]o withstand demurrer a party need only allege facts that, if proven, would entitle him to relief," and the Court shall accept all the plaintiff's well-pleaded facts and inferences drawn therefrom as true).

The plaintiff in the instant case is not required to prove the commission of the torts claimed, but only to allege their elements with sufficient specificity. *See Sharrow*, 306 Md. at 770, 511 A.2d at 500–01. The plaintiff is suing Josef Bikle in tort for the funds he and Austin Bikle jointly converted from the accounts of Austin and Helen Bikle. Whether Josef Bikle is liable to the plaintiff depends on whether the plaintiff can prove he was a joint tortfeasor and does not require the joinder of Austin Bikle's estate. Therefore, for the purpose of the joinder issue, the plaintiff's allegations meet the standards espoused in *Sharrow*, and we shall assume the truth of the well-pleaded facts contained in the complaint.

Thus, even though the defendant contends that there is no proof at this stage of whether the funds withdrawn from the accounts of Austin and Helen Bikle were the same funds deposited into the account of Austin and Josef Bikle, the plaintiff is only suing Josef Bikle as a joint tortfeasor. In that respect, the case law of this State clearly provides that a plaintiff has the right to bring an action against alleged joint tortfeasors either collectively *or* individually if the plaintiff so chooses. The plaintiff is under no obligation to join any and all potential tortfeasors when such parties are jointly and severally liable for the plaintiff's injuries. In *Lanasa v. Beggs,* 159 Md. 311, 151 A. 21 (1930), we stated the following with respect to this principle:

"Where several persons unite in an act which constitutes a wrong to another, each must assume and bear the responsibility for the misconduct of all, and the party injured may pursue all in one action or any one of them severally, or any number less than the whole without regard to the participation of the others."

159 Md. at 319, 151 A. at 25. *See also Hatzincolas v. Protopapas,* 314 Md. 340, 343–44, 550 A.2d 947, 949 (1988) (concluding that "even though any negligence of [the alleged tortfeasors] is necessarily concurrent, the plaintiff may maintain the action without suing every joint tortfeasor"); *Carroll v. Kerrigen,* 173 Md. 627, 632, 197 A. 127, 128 (1938) (quoting *Lanasa,* 159 Md. at 319, 151 A. at 25, with approval); *Gordon v. Opalecky,* 152 Md. 536, 550, 137 A. 299, 304 (1927) (concluding "the rule is that one may proceed against any one of several joint tort feasors regardless of the others").

We also find support for this rule in the case law and commentary regarding Federal Rule of Civil Procedure 19 from which Maryland Rule 2–211 is substantially derived. *See* Md.Rule 2–211 source notes. An interpretive note to Federal Rule 19 clearly provides that a "[j]oint tortfeasor is not [an] indispensable party under Rule 19(a)." USCS Rules of Civil Procedure, Rule 19, at 379 n. 24 (citing *Picard v. Wall St. Discount Corp.,* 526 F.Supp. 1248, 1252 (S.D.N.Y.1981)). *See also Temple v. Synthes Corp.,* 498 U.S. 5, 7, 111 S.Ct. 315, 316,

112 L.Ed.2d 263, 267 (1990) (per curiam) (recognizing "[i]t has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit"); *Lynch v. Johns–Manville Sales Corp.,* 710 F.2d 1194, 1199 (6th Cir.1983) (stating that " 'a tortfeasor with the usual "joint and several" liability is merely a permissive party to an action against another with like liability' " (quoting Advisory Committee Notes to Fed.R.Civ.P. 19)); *Tatham v. Hoke,* 469 F.Supp. 914, 917 (W.D.N.C.1979) (recognizing that joint tortfeasors are not indispensable parties), *aff'd,* 622 F.2d 584, 587 (4th Cir.1980); *Letmate v. Baltimore and Ohio Railroad,* 311 F.Supp. 1059, 1063 (D.Md.1970) (holding that "[a] joint tortfeasor is not *per se* an indispensable party under Rule 19").

In the instant case, the plaintiff may seek a judgment for the alleged injuries to Helen Bikle's estate from either Josef Bikle or the Estate of Austin H. Bikle if, as she alleges, they are joint tortfeasors. Consequently, the circumstances of the instant case constitute a permissive joinder at most, but certainly not a required one. If the defendant considers Austin Bikle's estate jointly and severally liable for the plaintiff's alleged injuries, then the defendant has the option of bringing an action for contribution against the estate. The defendant cannot, however, compel the joinder of another joint tortfeasor under these circumstances. We therefore hold that complete relief could be accorded among those already parties, and Rule 2–211(a)(1) does not mandate the joinder of Austin Bikle's estate.

## B.

The defendant next contends that, unless the Estate of Austin H. Bikle is joined, disposition of this action may impair or impede the estate's ability to protect a claimed interest relating to the subject matter of this action, or may leave Josef Bikle personally subject to a substantial risk of incurring multiple or inconsistent obligations. *See* Md.Rule 2–211(a)(2); Fed.R.Civ.P. 19(a) (stating that a person shall be joined if "the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the

person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations"). *See also* 7 *Federal Practice and Procedure: Civil 2d* § 1604, at 37–38.

■ As to the defendant's contention that he may incur multiple or inconsistent obligations absent the joinder of Austin Bikle's estate, in accordance with our previous discussion, we find this argument is without merit. *See* Part III.A., *supra.* The plaintiff in the instant case has sufficiently alleged that Josef Bikle is jointly and severally liable in tort. As a result, the plaintiff may sustain an action against Josef individually.

■ As to any interest of Austin Bikle's estate in the funds the plaintiff seeks to recover, we perceive no such interest which would be impaired by the disposition of this action among those already parties. The funds at issue in this case were allegedly deposited into a bank account held by Austin and Josef Bikle as joint tenants with a right of survivorship. Preliminarily, we must recognize the rudimentary property law principle that if property is held by joint tenants and one of the tenants dies, that individual's interest in the property is immediately extinguished. The surviving joint tenant becomes the sole owner of the property pursuant to the right of survivorship and without the necessity of probate. This fundamental rule has been explained as follows:

"As early as the thirteenth century the form of concurrent ownership known as joint tenancy was recognized. For purposes of tenure and survivorship, each joint tenant was seized of the entire estate in which the joint tenancy existed.... The joint tenancy was the preferred form of concurrent ownership because one of its inseparable incidents was the right of survivorship—i.e., the last surviving joint tenant became the sole owner of the entire estate in severalty. The right of survivorship was not a future interest like a reversion or a remainder, however. The last

surviving joint tenant became the sole owner because his original interest in the entire estate was left as the only interest after all the other joint tenants died." (Footnotes omitted).

Roger A. Cunningham et al., *The Law of Property* § 5.3, at 202 (1984). This commentary also asserts that "[t]he distinguishing feature of the joint tenancy is the right of survivorship incident to each joint tenant's present, undivided interest [and] the ultimate survivor becomes the sole owner in severalty." *Id.* at 207. Thus, any interest a joint tenant shares in such property dies with the joint tenant.

■ The decisions of this Court support this well-settled rule of joint tenancy law:

> "Joint tenancy means that each joint tenant owns an undivided share in the whole estate, has an equal right to possess, use, and enjoy the property, and has the right of survivorship."

*Downing v. Downing*, 326 Md. 468, 474, 606 A.2d 208, 211 (1992). *Downing* concerned property jointly owned by Helen S. Downing and her son, John Robert Downing. Upon Helen Downing's death, the personal representative of her estate sought to assert an interest in the subject property by arguing that Helen and John Downing were only tenants in common and not joint tenants. The personal representative argued, therefore, that the estate of Helen Downing possessed a continuing one-half interest in the property.[3]

The property at issue in *Downing* was conveyed " 'unto HELEN S. DOWNING ... and JOHN ROBERT DOWNING, as joint tenants, their heirs and assigns, forever in fee simple.' " *Downing*, 326 Md. at 470–71, 606 A.2d at 209 (quoting the granting clause in the deed conveying the proper-

---

**3.** Unlike a joint tenancy, the right of survivorship is not a component of a tenancy in common. Thus, the estate of a deceased tenant in common possesses a continuing interest in the property. Roger A. Cunningham et al., *The Law of Property* § 5.2, at 198–99 (1984) (stating that, "since survivorship is not an incident of tenancy in common, the interest of a tenant in common may be devised by will and may pass by intestate succession to his heirs").

ty to Helen and John Downing). Prior to concluding that the deed created a joint tenancy in the property, the *Downing* Court explained the following:

> "For the purposes of this case, the crucial distinction between a joint tenancy and a tenancy in common is the right of survivorship identified with a joint tenancy. Therefore, if we determine that a joint tenancy was created, the family farm passes to John [Robert Downing] as surviving joint tenant. If we find that a joint tenancy was not created, the deed establishes merely a tenancy in common and Helen's interest in the family farm will become part of her estate." (Citation omitted).

326 Md. at 475, 479, 606 A.2d at 211, 213. *See also Alexander v. Boyer*, 253 Md. 511, 523, 253 A.2d 359, 366 (1969) (observing it is "well established that the rights of dower or curtesy of spouses do not attach to a joint tenancy as there is no estate of inheritance in the respective joint tenants"); *Eder v. Rothamel*, 202 Md. 189, 191–92, 95 A.2d 860, 862 (1953) (noting that unless a joint tenancy is severed, as by an executed judgment lien, property passes to the surviving joint tenant upon the death of either of the joint tenants).[4]

■ In the instant case, therefore, since Helen Bikle possessed a right of survivorship in the original joint accounts and her husband predeceased her, she would have become the sole owner of the funds had they not been allegedly converted. Consequently, the funds in those original joint accounts would have become a part of Helen Bikle's estate upon her death. As a result, Helen Bikle's estate possesses the sole interest in any recovery of funds fraudulently converted from those accounts and deposited into the joint account of Austin and Josef

---

4. Whether the accounts at issue here are deemed joint tenancies or tenancies by the entireties does not affect the existence of a right of survivorship. *See State v. Friedman*, 283 Md. 701, 705, 393 A.2d 1356, 1358 (1978) (Tenants by the entireties, "who can only be husband and wife, are in legal concept but one person, each being seized of the entirety, with the survivor taking the whole."); *Barron v. Janney*, 225 Md. 228, 236 & n. 9, 170 A.2d 176, 181 & n. 9 (1961) (explaining that a tenancy by the entireties has a right of survivorship appurtenant to it).

Bikle. On the other hand, the Estate of Austin H. Bikle retains no interest in the funds because any interest Austin Bikle possessed during his life would have been extinguished upon his death.

■ The only other circumstance that could arguably affect the application of general joint tenancy principles would be if the accounts of Austin and Helen Bikle were jointly held "in trust" for one or both of the parties. The overwhelming majority of Maryland case law regarding joint bank accounts concerns those held "in trust" for one or both of the parties. *See Maryland Nat'l Bank v. Pearce*, 329 Md. 602, 620 A.2d 941 (1993) (providing a thorough synopsis of Maryland case law concerning this issue). The funds at issue in these cases do not pass under a "right of survivorship," but instead become the sole property of the surviving beneficiaries of valid trusts. *See Milholland v. Whalen*, 89 Md. 212, 218, 43 A. 43, 45 (1899) (stating that by "the terms of the declaration of trust," the funds became the surviving account holder's property *not* "by the right of survivorship as one of two joint owners . . . but purely and exclusively because [of] the trust"); *Wenger v. Rosinsky*, 232 Md. 43, 50, 192 A.2d 82, 87 (1963) (stating that the terms of a trust account, "under a long line of our decisions, starting with *Milholland v. Whalen*, [make] the account automatically the property of the survivor on the death of the other" (citation omitted)).

In the instant case, the pleadings and briefs of both parties have consistently referred to the accounts of Helen and Austin Bikle as being held as joint tenants with the right of survivorship. We note, however, that during oral argument in this case, plaintiff's counsel referred to the accounts of Austin and Helen Bikle as "joint trust accounts." A footnote in the plaintiff's reply brief also indicates that the accounts' signature cards contain the language, "Austin H. Bikle, in trust for himself and Helen Virginia Bikle, joint owners, subject to the order of either; the balance at death of either to belong to the survivor." Nothing in the record from the circuit court, however, gives any indication as to whether or not the joint

accounts were established in the "standard form used in a joint tenancy bank account," *i.e.*, an account held in trust for one or both of the parties.[5] *Wenger,* 232 Md. at 50, 192 A.2d at 87. Nevertheless, even if the accounts of Austin and Helen Bikle were created in the standard trust form so widely utilized in joint bank accounts, that distinction does not change the disposition of this cause of action.

*Milholland v. Whalen,* 89 Md. 212, 43 A. 43 (1899) is the seminal case regarding joint bank accounts that are held in trust. *See Pearce,* 329 Md. at 609, 620 A.2d at 944 (recognizing *Milholland* as "the seminal decision on the treatment of such accounts"). The joint account at issue in *Milholland* contained the following entry in the passbook:

> " 'Metropolitan Savings Bank, in account with Miss Elizabeth O'Neill. In trust for herself and Mrs. Mary Whalen, widow, joint owners, subject to the order of either; the balance at the death of either to belong to the survivor.' "

89 Md. at 213, 43 A. at 43. Miss O'Neill predeceased Mrs. Whalen, and the executor of Miss O'Neill's estate claimed an interest in the funds that was incongruous to the interest claimed by Mrs. Whalen as a beneficiary of the trust account. The Court concluded that Mrs. Whalen, not Miss O'Neill's estate, was entitled to the funds as the beneficiary of the trust which was properly established by Miss O'Neill during her lifetime. *Milholland,* 89 Md. at 219, 43 A. at 45.

Such trust accounts are generally presumed valid, and the surviving beneficiaries retain all the funds left on deposit after the death of the other account holder. *See Milholland,* 89 Md. at 218–19, 43 A. at 45. Therefore, absent proof of fraud, abuse of a confidential relationship, or other evidence tending to rebut the presumption that a valid trust

**5.** We note that neither the agreements creating the accounts, nor the passbooks of said accounts, nor the signature cards, were included in the record. In the absence of anything of this nature in the record and in light of conflicting assertions, we cannot conclusively determine whether these accounts were created in the standard trust form utilized in the majority of cases.

exists, the beneficiary of such a trust becomes the sole owner of the account upon the death of the other account holder. *See Wenger,* 232 Md. at 50, 192 A.2d at 87 (stating that the creation of a joint account held in trust "made the account automatically the property of the survivor on the death of the other"); *Hopkins Place Savings Bank v. Holzer,* 175 Md. 481, 487–88, 2 A.2d 639, 642 (1938) (holding that a joint account created a trust for both parties as "joint owners, subject to the power of withdrawal of all or any part of the fund on the order of either, and the fund or its residue, if any, at the death of either to belong to the survivor").

Nothing in the record before us in the instant case would tend to rebut the presumption of a valid trust in the original joint accounts of Austin and Helen Bikle. Therefore, Helen Bikle would have been the surviving beneficiary of the trust, and she would have possessed the only legitimate interest in the accounts subsequent to Austin Bikle's death. Alternatively, even if the accounts were not held in trust, but simply jointly owned by Helen and Austin Bikle, then Austin Bikle's estate never possessed any interest in the account due to Helen Bikle's acknowledged right of survivorship.

Under either the trust theory or the joint tenancy theory, Austin Bikle's interest in the accounts was extinguished upon his death, and disposition of this case will have no effect upon the property rights of his estate. *See* Md.Rule 2–211(a)(2).[6] The only conceivable "interest" that could exist regarding the estate, therefore, is the fact that it may be liable for contribution as a joint tortfeasor. At most, this "interest"

---

**6.** The purposes underlying Federal Rule of Civil Procedure 19(a), like those of its counterpart, Maryland Rule 2–211, support this view. At least one commentator has noted the following:

"If the disputed fund is a decedent's estate, executors or administrators are indispensable to actions asserting claims against assets of the estate or on behalf of the estate, but neither these representatives nor legatees need be joined in actions involving property in which they have no title or interest." (Footnotes omitted).

7 Charles A. Wright et al., *Federal Practice and Procedure: Civil 2d* § 1618, at 274–75 (1986).

creates a permissive joinder situation or a potential third-party action.[7]  *See Maloney v. D.C. Transit*, 241 Md. 420, 422, 216 A.2d 895, 896 (1966) (stating that rule permitting joinder of third-party defendant in tort action did not *"require* the joinder of such party, nor *preclude* separate action against him" (emphasis in original)).  Under neither of these circumstances would Rule 2–211 mandate the joinder of Austin Bikle's estate as a necessary party defendant.

The defendant, however, offers a number of cases to support his assertion that "the funds belong first to the Estate of Austin H. Bikle and that the Appellant's entitlement to the funds is derivative of Helen V. Bikle's rights vis a vis the Estate of Austin H. Bikle."  He cites *Knell v. Price*, 318 Md. 501, 569 A.2d 636 (1990), *Grove v. Frame*, 285 Md. 691, 402 A.2d 892 (1979), and *Wlodarek v. Wlodarek*, 167 Md. 556, 175 A. 455 (1934).  We find each of these cases distinguishable from the facts in the instant case.

In *Wlodarek v. Wlodarek*, Eva Wlodarek sued her deceased husband's daughter, Stanislawa Wlodarek, individually and in the daughter's capacity as an executrix of the decedent's estate.  167 Md. at 558, 175 A. at 456.  At issue was an antenuptial agreement signed by Eva and the decedent, providing that upon the death of either individual, the survivor would have no interest whatsoever in the property of which the decedent was seized.  Eva claimed she knew nothing of the contents of this document, being of German birth, unable

---

7.  In his motion to dismiss, the defendant suggests that a person in his individual capacity cannot sue himself in his representative capacity; therefore, the defendant states that he could not file a third-party action against the Estate of Austin H. Bikle in his individual capacity because he is a co-personal representative of that estate, and he would be forced to sue himself in that representative capacity.  *See Talbert v. Reeves*, 211 Md. 275, 280, 127 A.2d 533, 536 (1956).  We note that he could resign as the co-personal representative of the estate.

On the other hand, the defendant suggests that Susanne Cooper could resign as the co-personal representative of Austin Bikle's estate so she would not be in the position of suing herself in her representative capacity.  Since joinder of the estate is not otherwise mandated by Maryland Rule 2–211, Susanne Cooper does not have to make any such decision.

to read or write in English, and totally reliant upon her future husband who fraudulently misrepresented the contents of the agreement. Eva also claimed that in order to further the fraud, her husband engaged in a succession of conveyances through a "strawman" and then back to himself as a life tenant with a contingent remainder to his daughter, Stanislawa. *Wlodarek,* 167 Md. at 561, 175 A. at 457.

The defendant, Stanislawa, demurred on the basis that she could not be sued both in her individual capacity and her capacity as an executrix of the decedent's last will and testament. Those demurrers were overruled and Stanislawa appealed. In response to that appeal, this Court stated the following:

> "[T]he annulment of the antenuptial contract . . . would cast the title to the [property] upon Stanislawa Wlodarek and her two co-executors for the purposes of administration and devolution of title as part of the assets of decedent's estate, and would restore the marital rights of the surviving widow in all the personalty of which the testator would be possessed at the time of his death. The executors of the decedent were, accordingly, necessary parties defendant in a cause whose purpose was to assert what was an adverse interest and demand against the decedent's personal estate. . . ."

*Wlodarek,* 167 Md. at 564, 175 A. at 458. The critical distinction between *Wlodarek* and the instant case is that, if the fraud had not occurred in *Wlodarek,* the property in question would have been part of the decedent's estate and subject to the marital rights of his wife. The Court even acknowledged that it was a case "whose purpose was to assert what was an adverse interest and demand against the decedent's personal estate. . . ." *Id.* Thus, the personal representatives of the husband's estate were necessary parties to the action.

*Knell v. Price* and *Grove v. Frame,* the other two cases relied upon by the defendant, are equally inapposite to the instant case. Just as in *Wlodarek,* if the allegedly fraudulent conveyance in each of these cases was invalidated, the subject

property reverted back to the decedent's estate. Thus, a decision in favor of the plaintiff in each case would have the effect of reestablishing the estate's interest in the subject property. *See Knell,* 318 Md. at 504, 569 A.2d at 637 (stating that the plaintiff filed her complaint "seeking a judgment declaring that ... the deed 'in so far as it purports to give [a third party] the fee simple ownership of the ... property at the death of [the husband was] void,' so that the property became a part of [the husband's] estate"); *Grove,* 285 Md. at 692, 402 A.2d at 893–94 ("In this case we are asked to decide whether a husband's absolute and unconditional transfer of his residence to a third party for nominal consideration and with the avowed purpose of forcing his wife to leave the property, can be set aside by his wife after his death as either a fraud on her right to alimony and support *or on her right to share in his estate."* (emphasis added)).

In the instant case, however, we agree with the plaintiff's assertion that, "[s]hould the trial court find ... that [the] funds were fraudulently transferred into [the] joint accounts with Josef Bikle, the cash would not go back into the Estate of Austin H. Bikle." Unlike *Wlodarek, Knell,* and *Grove,* therefore, the joinder of Austin Bikle's estate is unnecessary to the disposition of the torts alleged in this case because any interest Austin Bikle had in the joint account with Helen Bikle was extinguished when he predeceased her.

In conclusion, the plaintiff to this tort action may seek damages for the injuries sustained from any of the individual tortfeasors. In addition, the Estate of Austin H. Bikle can claim no interest in the funds solely owned by Josef Bikle, the surviving joint tenant of the second account. Consequently, Austin Bikle's estate has no interest in the outcome of this litigation that could be impaired by a failure to join it as a necessary party defendant. Finally, Josef Bikle will not be subject to multiple or inconsistent obligations to the extent he is liable to Helen Bikle's estate for funds he fraudulently converted from the joint accounts of Austin and Helen Bikle. We hold, therefore, that Maryland Rule 2–211 does not man-

date the joinder of the Estate of Austin H. Bikle in this action, and we shall reverse the circuit court.

*JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE APPELLEE.*