988 A.2d 1134

**Carole M. FAGNANI, et al.**

v.

**Jeffrey B. FISHER, et. al., Substitute Trustees.**

**No. 2285, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

Feb. 3, 2010.

464

Walter W. Green, College Park, for appellant.

Jeffrey B. Fisher (Martin S. Goldberg, Scott R. Robinson, Fisher Law Group, PLLC, on the brief), Upper Marlboro, for appellee.

Panel: MEREDITH, GRAEFF and RAYMOND G. THIEME, JR. (Retired, specially assigned), JJ.

RAYMOND G. THIEME, JR. J., Retired, Specially Assigned.

This case involves a foreclosure sale at which appellant Ricardo Fagnani's brother, Ronald Fagnani, bought the interest of appellant and his wife, appellant Carole Fagnani, in the house the two Fagnani brothers had owned with, and then inherited from, their mother. The Circuit Court for Montgomery County overruled appellants' exceptions to the sale and ratified it. The appellants appeal and pose five questions,[1] which we have consolidated into the following three questions:

---

1. Appellants posed these questions:

   1. Did the lower court err in denying appellants' exceptions to the June 2, 2008 foreclosure sale?
   2. Did the lower court err in ratifying the foreclosure sale of a partial interest in the property where the deed of trust did not contain a

1. Did the circuit court err when it ratified the foreclosure sale of only a partial interest in the subject property?

2. Did the circuit court err in ratifying a foreclosure sale which yielded a purchase price of only 40% of the alleged market value of the property, which was conducted after the posting of an advertisement containing inaccurate information, and which resulted in the purchase of the property by the substitute trustees?

3. Did the circuit court abuse its discretion by denying appellant's requests for a postponement of the hearing on appellants' exceptions and for reconsideration of its ratification order?

We conclude that the circuit court neither erred nor abused its discretion, and we therefore affirm the ratification of the sale.

## FACTS AND PROCEEDINGS

From 1982 until her death in 1985, Pauline W. Fagnani jointly owned a house in Silver Spring ("the Property") with her two sons, Ricardo and Ronald Fagnani. Mrs. Fagnani left her interest in the Property to her sons, with the result that each then held a one-half interest as tenants in common. On February 13, 2003, the brothers retitled the Property to convert Ricardo's half-interest to a tenancy by the entireties with his wife, Carole Fagnani.

On November 10, 2003, Carole borrowed $85,000 from American Residential Mortgage in a loan secured by a deed of trust for the property. Only Carole entered into the note,

---

power of sale that authorized the sale of less than the entirety of the property and the property was not divisible?

3. Did the lower court err in allowing the enforcement of the power of sale provision in a deed of trust where the substitute trustees claimed that one of the signatures on the deed of trust was forged?

4. Did the substitute trustees breach their duty to appellants to sell the property at the best possible price?

5. Did the lower court abuse its discretion in denying appellants the opportunity to present testimonial evidence at the August 27, 2008 hearing and denying appellants' motion to alter or amend?

which Ricardo signed for her as "her attorney in fact." The note incorporates the default provisions set forth in the deed of trust.

The deed of trust, recorded in Montgomery County, defines "Borrower" as "Carole Fagnani, a married woman," and the Property as "located in the County of Montgomery ... [and] recorded among the land records of Prince George's County. . . ." Ricardo again signed for Carole "as her attorney in fact." Signatures also appear over the names of Ricardo and Ronald, as "borrowers." All three signatures were notarized. The signatories covenanted that "Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the property and that the Property is unencumbered, except for encumbrances of record." Both documents give the lender the right to disapprove, (or approve), the transfer of "any legal or beneficial interest in the [P]roperty. . . ." The deed of trust provides that "Lender or its designee may purchase the [P]roperty at any sale."

The record contains Ronald's allegations in a verified complaint for declaratory judgment in another action that his signature on the note was forged. The record does not reflect the outcome of that litigation; the appellees' counsel stated that it was settled. The record also does not evidence that the original lender made the loan with knowledge of any fraud. In any event, the Note was assigned to Ronald.

Carole defaulted on the loan after not paying the monthly installment due on January 1, 2006. On February 16, 2008, Ronald appointed the substitute trustees ("trustees"), who are appellees here. On February 29, 2008, the trustees initiated foreclosure proceedings. In March, 2008, Ricardo filed a petition for bankruptcy. On May 8, 2008, the bankruptcy court modified its stay to permit the foreclosure of the property, and, on May 16, 23, and 30, 2008, the trustees advertised a public auction for the Property in the Washington Times. The advertisement bears a bold-face caption reading,

*Foreclosure sale*
**VALUABLE IMPROVED DWELLING**

.

**2617 Blue Ridge Avenue
(Only as to Undivided ½ Interest
of Ricardo and Carole Fagnani)
Silver Spring, MD 20902**

The advertisement further stated that the sale would be conducted "in enforcement of a Security Instrument granted by Carole M. Fagnani and Ricardo L. Fagnani aka Rick Fagnani and recorded among the Land Records of Montgomery County. . . ." The Property was described as:

All that property described in said Security Instrument, being in the 13 Election District of Montgomery County, Maryland, and being improved by a dwelling bearing the street address of 2617 Blue Ridge Avenue (Only as to Undivided ½ interest of Ricardo and Carole Fagnani), Silver Spring, Maryland 20902. Subject to all covenants, restrictions and easements of record, if any.

The auction was conducted on June 2, 2008. Sharie Thompson, acting as agent for Ronald, submitted the only bid, and the Property was sold to her for $83,800. One of the trustees filed a report of the sale with the circuit court on that day. In that report, the trustee attested that "the [P]roperty was fairly sold and brought a fair price." The record also contains an illegibly-signed auctioneer's certification attesting that Thompson "was the high bidder and that the sale was fairly made"; a Montgomery County document reflecting the assessment of the Property at $327,730 for property tax purposes; and Ricardo's assertions in an affidavit that "the market value of the [P]roperty is valued near . . . $400,000," and "[t]he Exceptants['] interest . . . is worth nearly . . . $200,000. . . ."

On June 18, 2008, the court issued a notice of proposed ratification and confirmation of the sale. The appellants filed exceptions and requested a hearing, which the court set for August 27, 2008. The trustees responded to the exceptions on August 21, 2008, and the parties appeared for the hearing on August 27. The court preliminarily denied appellants' request for a continuance in which to address the trustees' response to the exceptions. After hearing the parties' argument on the

fairness of the sale of only a 50% interest in the Property and the effect of the alleged forgery on that question, the court ruled:

It appears in this case the Fagnanis did, in fact, sign the deed of trust, then default, and it was sold by the substitute trustees. The price received of $83,800 is not grossly inadequate. It was properly advertised as a one half interest.

It is a rather strange situation, but the only alternative the trustees had when it was in default is to protect the loan and to foreclose on the property and to foreclose against the people that signed the deed of trust.

I will deny the exception to the sale and enter final ratification.

The appellants filed a motion to alter or amend or for a new trial, which the court denied.

## DISCUSSION

### Standard of Review

In reviewing a court's ratification of a foreclosure sale, we disturb the circuit court's findings of fact only when they are clearly erroneous. *Jones v. Rosenberg,* 178 Md.App. 54, 68–69, 940 A.2d 1109 (2008). In reviewing the circuit court's findings of fact, we are mindful that the exceptant to a foreclosure sale bears the burden of proving that the sale was invalid. *J. Ashley Corp. v. Burson,* 131 Md.App. 576, 582, 750 A.2d 618 (2000) (citing *Ten Hills Co. v. Ten Hills Corp.,* 176 Md. 444, 449, 5 A.2d 830 (1939)). The exceptant must also demonstrate that any irregularities caused "actual prejudice." *J. Ashley Corp., supra,* 131 Md.App. at 586, 750 A.2d 618; *see also Harris v. David S. Harris, P.A.,* 310 Md. 310, 319, 529 A.2d 356 (1987) (stating, "In civil cases, it is well established that the burden of demonstrating both error and prejudice is on the complaining party"). We conduct our review on the basis of the evidence introduced into the record, and not on the basis of either the statements of counsel as to what occurred in other cases, *Witt v. Zions,* 194 Md. 186, 189, 70

A.2d 594 (1949), or proffers not accepted by the court as evidence. *Cf. J. Ashley Corp., supra,* 131 Md.App. at 582, 750 A.2d 618.

We review the court's legal determinations de novo. *Jones, supra,* 178 Md.App. at 68–69, 940 A.2d 1109 (citing *Liddy v. Lamone,* 398 Md. 233, 246–47, 919 A.2d 1276 (2007)).

## I. *Whether the trustees could foreclose on the appellants' share without also foreclosing on Ronald's share*

■ According to the appellants, the trustees not only lacked the power to foreclose only on the appellants' one-half interest, but also breached their duty to appellants by not foreclosing on Ronald's interest at the same time. Appellants contend that the deed of trust did not confer upon the trustees the authority to sell the appellants' tenancy in common separately from Ronald's tenancy in common and that the separate sale significantly lowered the value of their interest. The trustees argue that appellants waived their objection to the sale of the half-interest by not raising it before the sale and, in any event, that appellants did not introduce evidence of the claimed effect on the value of their interest. The trustees additionally argue that the deed conveyed only the appellants' interest to them because, the trustees allege, Ronald's signature on the deed of trust was forged. Appellants reply that the trustees waived the issue of waiver by not raising it in the circuit court. Disclaiming any claim that the deed of trust is void,[2] appellants further reply that the trustees did not prove the alleged forgery.

We shall begin with the question of whether the appellants could wait until after the foreclosure sale to contest the trustees' foreclosure of only their half-interest. Initially, we hold that the trustees did not waive this issue; they argued in their response to appellants' exceptions that debtors "may file exceptions challenging only procedural irregularities" and at

---

2. In their reply brief, appellants state that they "do not claim that the Deed of Trust is void."

the hearing that no "procedural irregularities" had occurred that would allow the court to overturn the sale. However, in light of our recent decision in *Bierman v. Hunter*, 190 Md. App. 250, 988 A.2d 542 (2010), we shall reach appellants' arguments that the Property could only be sold as an entirety, that the trustees breached their duties by selling only a one-half interest, and that the sale of a separate interest in common harmed appellants. We shall begin with the question of whether, in light of the bundle of rights attached to the tenancies in common held by these parties, appellants met their burden, both as exceptants and appellants, to establish that the alleged conduct or error caused them harm.

■ A fundamental characteristic of a tenancy in common is the ability of each tenant to devise (or not devise) his or her separate interest separately. For example, in *Cattail Associates v. Sass*, 170 Md.App. 474, 907 A.2d 828 (2006), a developer which wished to buy a parcel of land from multiple tenants in common entered into a contract that was ineffective as to one co-tenant. *Id.* at 487, 907 A.2d 828. We held that the contract was valid as to the other tenants and that its performance would simply convey to the developer an undivided share as a tenant in common with the non-signing tenant. *Id.* at 488, 907 A.2d 828. In *Cook v. Boehl*, 188 Md. 581, 53 A.2d 555 (1947), a tenant in common who leased the property to a third party conveyed only a leasehold interest in a tenancy in common of the undivided estate. *Id.* at 593, 53 A.2d 555. In *Cooper v. Bikle*, 334 Md. 608, 640 A.2d 1120 (1994), the Court of Appeals noted the ability of a tenant in common to devise his interest by will. *Id.* at 622, n. 3, 640 A.2d 1120. Under these same principles, the separate interest of a joint tenant, once severed and converted to a tenancy in common by the entry of a lien against that joint tenant, may be sold in execution of that lien. *See, e.g., Helinski v. Harford Memorial Hospital*, 376 Md. 606, 615–16, 831 A.2d 40 (2003).

Here, appellants only owned a tenancy in common, with the burdens attendant to that interest, such as the other owners' right to entry and possession. *See Cook, supra,* 188 Md. at

592, 53 A.2d 555 (stating that each tenant in common "has an equal right of entry and possession...."). *Appellants thus never owned 50% of a wholly-owned property appraised for tax purposes at $327,730; they instead owned 100% of a 50% tenancy in common of that property,* and they could not sell the Property clear of Ronald's right to entry and possession. Appellants introduced no proof that a sale of their co-tenancy interest to a purchaser other than Ronald would have yielded more than the price realized, and they thus did not establish the prejudice requisite to both their exceptions and their appeal to this Court. We nonetheless continue with the matter of the trustees' duties.

■ Trustees owe duties to the owners of the secured property not only to sell the property at a fair price, but also to sell no more of the property than necessary to achieve payment of the debt. *Webster v. Archer,* 176 Md. 245, 254, 4 A.2d 434 (1939). There, the Court of Appeals defined foreclosure trustees' duties as follows:

> An assignee selling mortgaged property at a foreclosure sale is a trustee for the mortgagor and persons claiming under or through him [citations omitted], and is under a duty (1) to exercise the same degree of prudence, care, diligence and judgment, that a prudent man of ordinary business judgment and experience would exercise, in selling his own property, to see that the property is sold for the best price obtainable at such a sale [citations omitted], and (2) to sell no more of the property than is necessary to pay the mortgage debt, accrued interest, and costs of foreclosure, *Wiltse on Mortgage Foreclosures,* sec. 573.... For, as stated by Wiltse: "In a mortgage foreclosure the plaintiff is entitled to the sale of a sufficient amount of land to pay his claim and no more; and the sale should be made by the officer conducting it in such a manner to pay the just demands of the plaintiff without inflicting unnecessary loss upon the debtor, or interfering with the rights and interests of subsequent incumbrances."

*Id.* at 253–54, 4 A.2d 434.. The circuit court correctly applied this law when it determined that the trustees could properly foreclose just the interest held by the defaulting parties.

With regard to the trustees' power to sell separate interests in the Property, neither the note nor the deed of trust alters the recorded ownership of the Property by appellants and Ronald as tenants in common. The separate tenancies could thus be foreclosed upon separately, and Ronald, as both holder of the note and as a tenant, could choose not to foreclose on his own interest. We need not reach the parties' contentions concerning whether Ronald's signature was forged, whether the original lender took subject to such a forgery, and, ultimately, whether the deed of trust conveyed Ronald's interest, because the result is the same either way.

    II.   *Whether the trial court clearly erred in finding that the price received at the foreclosure auction was "not grossly inadequate," that the sale was properly advertised, and that the circumstances did not make the sale invalid*

■   Appellants assert that the proceeds of the auction were "grossly inadequate," that the advertisement was misleading, and that the sale of the Property to Ronald's agent required the court to apply a heightened degree of scrutiny to the sale. We shall take each contention in turn.

■   Appellants contend that the winning bid of $83,800 of a partial interest in the Property, which was assessed at $327,730 for property tax purposes, apparently as if wholly owned, was "grossly inadequate," while the trustees argue that that sum does not "shock the conscience." A mortgagor excepting to a foreclosure sale on the grounds that the proceeds were inadequate bears the burden of proving the exception, *J. Ashley Corp., supra,* 131 Md.App. at 582, 750 A.2d 618, and, specifically, of proving that " 'the price is so glaring and palpable as to indicate fraud or unfairness, or suggest that the trustee lacked the judgment and skill necessary to any adequate administration of the duties of his office.' " *Id.* at 584,

750 A.2d 618 (quoting *Ten Hills, supra,* 176 Md. at 449, 5 A.2d 830). As we have discussed in Section I, above, the record contains no evidence of the value of a one-half interest in this commonly-held Property. Given the lack of proof in the record of "actual prejudice," *cf. J. Ashley Corp., supra,* 131 Md.App. at 586, 750 A.2d 618, we perceive no clear error in the circuit court's denial of this exception. We turn next to appellants' contentions about the advertisement placed by the trustees.

Appellants contend that the advertisement was misleading because it referred to the recordation of the "Security Instrument," here the deed of trust, in the land records of Montgomery County, while the deed of trust refers to the recordation of the deed for the Property in the land records of Prince George's County. Appellants also contend that the advertisement of the sale of a partial interest was "not proper." With respect to appellants' first contention, we again refer to the requirement that an exceptant prove that the alleged irregularity has caused "actual harm." *Id.* The record shows only that the deed of trust was filed in Montgomery County, that it describes the Property as located in Montgomery County, and that the spousal transfer of Ricardo's interest to Carole as a tenant by the entireties was recorded in Montgomery County. Absent a showing by appellants that the error in the deed of trust prejudiced them or that the Property was, in fact, in Prince George's County and not subject to proceedings elsewhere, we conclude that the circuit court correctly denied this exception.

With respect to the appellants' contention that the advertisement of the sale of a partial interest was not "proper," the appellants have not identified a procedural irregularity in the advertisement, such as a variance between the interest advertised and the interest sold. As we explained in Section I, appellants' substantive complaint that the trustees sold only a partial interest does not provide grounds for reversal.

We proceed to appellants' argument that the circuit court did not sufficiently scrutinize the sale of the Property to the

holder of the note. Quoting *Southern Maryland Oil, Inc. v. Kaminetz,* 260 Md. 443, 272 A.2d 641 (1971), appellants argue that the sale of a property at foreclosure to the foreclosing party is subject to heightened scrutiny and must be set aside "upon 'slight evidence of partiality, unfairness or a want of the strictest good faith.' " *Id.* at 453, 272 A.2d 641 (quoting *Heighe v. Evans,* 164 Md. 259, 270, 164 A. 671 (1933)).

■ However, the Court of Appeals additionally instructed in *Southern Maryland* that the fact that the lender's assignee purchased the property at foreclosure is not in itself grounds for setting aside the sale, and, further, that the "motives of a mortgagee or of his assigns cannot be set up as a defense to a foreclosure of the mortgage." 260 Md. at 453, 272 A.2d 641. The Court stated that the exceptant there was required to "allege in its exceptions some impropriety in the conduct of the foreclosure sale or fraud by the mortgagor known to the purchaser which would render the sale invalid. . . ." *Id.* To the same effect, in *J. Ashley Corp., supra,* 131 Md.App. 576, 750 A.2d 618, where the exceptant complained that the lender bought the foreclosed property, we stated that Maryland has "no blanket restriction . . . bar[ring] a trustee from accepting a written bid on behalf of a lender." *Id.* at 587, 750 A.2d 618. After noting that the trustees had neither bid on their own behalf nor received personal benefit from the sale, we affirmed the ratification of the sale. *Id.* at 587–88, 750 A.2d 618.

■ Here, even had appellants proven prejudice from the sale of the Property to Ronald, the evidence was that the deed of trust permitted the lender to buy the Property and that the auctioneer conducted the sale properly and sold the Property to the highest and only bidder. Appellants' allegation in their exceptions that Ronald's purchase was the "culmination" of a "plan to convert the entire ownership of the Property to himself," even if it had been proven, merely alleged motive and, under *Southern Maryland,* 260 Md. at 453, 272 A.2d 641, did not state grounds for relief.

Because the appellants did not meet the exceptant's burden of proving either prejudice or fraud or impropriety in the sale, the circuit court correctly denied their exceptions.

III. *Whether the circuit court abused its discretion when it denied the appellants' request for a continuance and denied their motion for a new trial or to alter or amend the judgment*

Appellants contend that the circuit court abused its discretion by denying their request for a continuance so that appellants could respond to the trustees' allegations of forgery. Appellants additionally contend that the court denied them the opportunity to testify that the Property was actually partnership property on which the holder of the note could not foreclose. The trustees respond that appellants knew that Ronald disclaimed signing the deed of trust, because Ronald had filed a declaratory judgment action against them alleging that he did not sign, and was not bound by, the deed of trust. The trustees further argue that the court did not prevent appellants from submitting evidence.

We review the circuit court's denial of a continuance of a ratification hearing for abuse of discretion. *Brooks v. Bast*, 242 Md. 350, 354, 219 A.2d 84 (1966) (finding "no abuse of discretion" in the circuit court's denial of the exceptants' request for a continuance). Additionally, appellants bear the burden of establishing that they were prejudiced by the error of which they complain. *Harris, supra*, 310 Md. at 319, 529 A.2d 356 (stating, "the appellate courts of this State will not reverse a lower court judgment for harmless error: the complaining party must show *prejudice* as well as *error*").

With respect to the circuit court's denial of a continuance in which to permit appellants' new counsel time in which to prepare a response to the trustees' allegations that Ronald's signature was forged, the evidence before the court was that Ronald had asserted that allegation both in an undated declaratory judgment action filed in that court and in an April 4, 2008 filing in Ricardo's bankruptcy proceeding in the U.S.

District Court. The bankruptcy court lifted the stay on the foreclosure on May 8, 2008; the trustees advertised the auction that month; the auction was held on June 2, 2008; appellants' counsel filed exceptions on July 18, 2008; and the hearing was held over five weeks later, on August 27, 2008. We held in *Jones, supra,* 178 Md.App. at 68, 940 A.2d 1109, that a two-week span between the entry of that counsel's appearance and the hearing provided counsel time in which to investigate a defense. Here, too, we hold that the circuit court did not abuse its discretion when it did not grant a continuance.

With respect to the appellants' argument that the circuit court prevented them from testifying that the Property was partnership property, not subject to foreclosure, we note that this proposed testimony raised neither a "procedural irregularity" properly raised by exception, *cf. Jones, supra,* 178 Md.App. at 70, 940 A.2d 1109, nor, in light of appellants' disclaimer in their reply brief in this Court, a challenge to the underlying mortgage. *Cf. Bierman, supra,* 190 Md.App. at 269–70, 988 A.2d 542. Whether appellants could raise this issue by way of a Rule 14–305(d) exception is therefore questionable. In any event, the transcript is devoid of any refusal by the court to admit evidence from either party. The transcript shows instead that Ricardo was present and that appellants' counsel stated that "there is no need to take evidence based [upon what was submitted by the substitute trustees]." Appellants' counsel requested that "if [the court were] inclined to take evidence on other issues in the exceptions, [counsel] would request ... holding off doing that so that [he could] investigate some of these other factual allegations that have been made by the mortgagee." We conclude that the court did not deny appellants the opportunity to prove their exceptions, did not abuse its discretion by proceeding with the hearing as scheduled, and, in any event, did not prejudice appellants by not hearing them on an issue not properly before the court.

We turn to appellants' motion to alter or amend, or, in the alternative, for a new trial. As we stated in *Jones, supra,* 178

Md.App. 54, 940 A.2d 1109, "[w]e review the circuit court's decision to deny a request to revise its final judgment under an abuse of discretion standard." *Id.* at 72, 940 A.2d 1109.

In their motion, appellants stated, "The Court did not allow either party to put on testimonial evidence...." Appellants further stated that counsel was not aware until the trustees opposed the exceptions less than four business days before the hearing that the declaratory judgment action had been filed in 2006. In light of Ricardo's status as a party to the declaratory judgment action, signer of the note as "attorney in fact" for Carole, and co-signer of the deed of trust, and in light of his availability to present his testimony at the hearing, we perceive no abuse of discretion in the court's determination that the trustees' opposition raised no procedural unfairness or new factual issues requiring the court's exercise of its revisory powers.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANTS**